GOVERNEUR W. MORRIS and others *vs.* JAMES McCLARY.

June 2, 1890.

Evidence—Identity of Name.—Identity of name, is usually, in the first instance, sufficient to prove identity of person.

Adverse Claims—Claim Based on Legal Title—Laches not a Bar.— In the action under the statute to determine adverse claims to real estate, if a party relies on a legal title and seeks no equitable relief, his right to relief is barred only by the lapse of time prescribed by the statute of limitations. The equitable rule as to laches defeating relief sought, applies only when the relief sought is equitable.

Adverse Possession of One of Several Lots, under Deed. — Where a person is in actual adverse possession of only one of several distinct and separate tracts or lots not in the same enclosure, under a deed of them to him, the deed will not define or extend his possession so as to include those of which he is not in actual possession; as if his deed describe by lot and block several, or even the greater number, of the lots in a platted town-site or addition, his actual possession of one will not, for the purpose of adverse possession, extend to those unenclosed lots of which he is not in actual possession.

Plaintiffs, heirs-at-law of Arthur B. Morris, of New York, who died in that city August 11, 1869, brought this action in the district court for Hennepin county, to determine the defendant's adverse claim to lot

2, in block 45, of Baker's fourth addition to Minneapolis, being vacant and unoccupied land. On June 24, 1857, one J. G. Sherburne, of Minneapolis, was the owner of the lot in dispute, and on that day he conveyed it, with other property, to Arthur B. Morris, whose place of residence was not mentioned in the deed, and whose identity with plaintiffs' ancestor was put in issue by defendant. The defendant, denying plaintiffs' title, pleaded adverse possession in himself and his grantors under the conveyances mentioned in the opinion. At the trial, before *Young,* J., there was no evidence, aside from the deed of Sherburne, to show that the grantee in that deed and the plaintiffs' ancestor were the same person. The facts found by the court in regard to the adverse possession relied on by defendant are stated in the opinion. Judgment was ordered for plaintiffs, and the defendant appeals from an order refusing a new trial.

*Stocker & Matchan* and *A. B. Choate,* for appellant.

*Geo. C. Ripley, C. E. Brennan, S. A. Booth,* and *Jackson & Atwater,* for respondents.

GILFILLAN, C. J. To prove identity of person, identity of name is usually, in the first instance, sufficient. 1 Gr. Ev. § 575, and note; 2 Phil. Ev. 509, and note; Abbott's Trial Ev. 101. Very slight evidence may be sufficient to overcome the presumption of identity of person which identity of name raises, so as to put upon the party claiming such identity the necessity of further proof; but until there is something to raise a doubt upon it, it is ordinarily enough. In this case there is nothing to raise a doubt that the Arthur B. Morris, to whom the land in controversy was conveyed in 1857, whose residence is not given in the deed of conveyance, was the Arthur B. Morris who died in New York City in 1869.

In the statutory action to determine adverse claims to real estate, the defendant may undoubtedly plead and have determined an equitable title in himself, as against a legal title relied on by the plaintiff, and, as to such equitable title, the equitable rule as to laches would apply. But where only strictly legal rights are in controversy, no neglect in asserting the right, short of the time prescribed by the statute of limitations, will bar the appropriate legal remedy. If the holder of the legal title seeks equitable relief, unreasonable delay in

asserting his right may, under the equitable rule as to laches, bar his claim to such equitable relief in less time than would, under the statute of limitations, bar his legal remedy. But, where there is no estoppel, his legal remedies will be barred only by the statute of limitations.

To set the statute of limitations in operation against plaintiffs' legal title and the right to the appropriate legal remedy, it was necessary that there should be a disseisin of them or their ancestor; and to complete the bar of the statute, it was necessary for the disseisin to continue for twenty years. The facts found by the court below show a disseisin, but do not show that it continued for the requisite length of time. For the purpose of disseisin and the establishing of an adverse possession within the statute, a deed of the land or color of title to it is not equivalent to actual, open, and notorious possession. It merely serves, in some cases, to define the extent of the party's possession. If one has a deed or color of title to one entire tract of land, as to one whole lot or farm, which is unenclosed, and he is in actual possession of a part, the remainder not being actually occupied by any one, his deed or color of title will, ordinarily, extend his possession to the entire tract for the purpose of showing adverse possession. But the rule does not apply where the deed or color of title is to several distinct lots or tracts. In that case his actual possession of one will not be extended by his deed, so as to put him constructively in possession of the others. Tyler on Ejectment, 900.

The land, adverse possession of which was sought to be shown, consisted of three government forty-acre pieces, which, in 1857, were duly platted as an addition to North Minneapolis. This plat remained in force till July 15, 1865, when it was vacated by a decree of the district court. While the plat continued, lots and blocks were conveyed and mortgaged to different persons. In 1864, R. J. Baldwin acquired color of title, through a tax-deed, to some of the lots. In 1866, he acquired title to others, through the foreclosure of a mortgage executed by the owners of the lots. In 1867, he received a tax-deed (void) to others of the lots. In 1866, he executed a deed of the three forty-acre pieces to Andrew T. Hale. At that time Baldwin's

title and color of title extended to the greater part though not to all of the lots. Prior to that time only one of the forties (not including the lots here in controversy) was enclosed. The other two forties were open and in a state of nature, not actually occupied by any one. Baldwin's color of title being only to separate and distinct lots, his possession of such of the lots as were within the enclosed forty could not, according to the rule we have stated, extend, by virtue of the deeds to him, so as to put him constructively in possession of the lots claimed by him in the other two forties,—certainly not while the lots remained separate and distinct by the plat remaining in force. The court below seems, in the matter of admitting or excluding evidence, to have tried the case on the theory that while, prior to the vacation of the plat, Baldwin's actual possession of some of the lots claimed by him would not draw to it the constructive possession of the other lots, it might have that effect after the vacation. As this rule was fully as favorable to the defendant as he was entitled to, we will not consider whether it is strictly accurate.

We will not go through the numerous assignments of error based on the rulings of the court excluding evidence offered by defendant to show adverse possession. Generally they were correct. In some instances they may appear to have confined the defendant too strictly, but in all such instances the error, if any, was cured and rendered harmless, by admitting fully all proof offered of what was alone competent to prove as to acts prior to the vacation of the plat,—to wit, all acts of actual possession.

The adverse possession of which defendant may have the advantage, so far as it depended on constructive possession by virtue of a deed, commenced with Andrew T. Hale in October, 1866. He and his successors in interest kept tenants in possession under successive leases of the three forties till 1882, when the premises were conveyed to Willis Baker, who appears to have platted them as "Baker's Fourth Addition," and in December, 1882, he conveyed the land in dispute here to Libeus Andrus, from whom by diverse mesne conveyances defendant claims title. Andrus did not go into possession, so that the continuity of adverse possession was broken upon the conveyance to him, unless there might be credited to him, as his possession, the

constructive possession, under a lease for years, of a tenant of Baker's grantor, whose term had not expired when the land was conveyed to Baker. But that tenant went out in the spring of 1885. Dating the commencement of the adverse possession with the conveyance to Andrew T. Hale, even though there be added to the time it continued the time the tenant remained in possession, the time falls short of twenty years.

Upon the evidence it would have been hard to sustain a finding that there was any adverse possession of the unenclosed two forties prior to the conveyance to Hale, in October, 1866.

Order affirmed.