# HELEN HANSON v. NORTHERN STATES POWER COMPANY AND ANOTHER.[1]

July 31, 1936.

No. 30,873.

*Hanson & Willcox,* for appellant.

*Briggs, Weyl & Briggs* and *Arthur M. Lystad,* for respondents.

DEVANEY, CHIEF JUSTICE.

Action to recover damages for injuries received in an automobile accident.

[1]Reported in 268 N. W. 642.

It is alleged that while riding with her husband and two guests in their family automobile on a highway near the village of Rockford plaintiff received severe injuries when the car ran into a ditch and against a pole on the side of the road. It is claimed that the accident was caused by the negligence of one Mike Rosland, repairman for the defendant company, who allegedly had left his car parked in the center of the highway while he was making some repairs on the power lines running along the side thereof. Plaintiff asserts that her husband was obliged to run into the ditch because of the manner in which the defendants' car was parked.

Shortly after this occurrence, in 1930, Conrad Hanson, plaintiff's husband, commenced an action to recover damages allegedly sustained to his automobile and person.

On or about January 9, 1931, Mr. Hanson's attorneys commenced negotiations with defendants' attorneys. The result of these negotiations was that defendants offered to pay the sum of $400 in full compromise and settlement of the claims of all four of the occupants of the auto. A joint release was prepared by the defendants, which was later signed by all four persons concerned, in the office of Mr. Hanson's attorneys.

Mrs. Hanson, plaintiff in this action, commenced suit four years after the signing of the above mentioned release. Defendants answered denying liability, setting up the settlement agreement and the release. Plaintiff replied, denying the signing of the release, denying consideration for such signing, alleging that she was mentally incompetent to enter into such an agreement, and alleging mutual mistake as to the nature and extent of her injuries.

Defendants moved to strike plaintiff's reply and for judgment on the pleadings on the ground that it was sham and false and that plaintiff was guilty of laches. The court entered an order granting defendants' motion. This is an appeal from the court's order.

We believe it is clear that plaintiff signed the release in question. It is equally clear that the question of laches has no proper place in this discussion. Plaintiff brought her action within six years of the time of the accident, the period of the statute of limitations,

and there is no ground upon which the claim of laches can be based. Only three questions require discussion:

(1)   Was there consideration for the release?

(2)   Was there mutual mistake as to the nature and extent of plaintiff's injuries?

(3)   Is there any issue as to the mental incompetency of the plaintiff at the time of the signing of the release?

■   Plaintiff contends that the release is not binding upon her because she received no consideration for the signing thereof. It is her claim that her husband's attorneys were not her attorneys; that the sum paid to her husband was for his injuries alone and that she received no part thereof. In support of this contention plaintiff stresses the fact that the draft for the sum agreed upon was "payable *only* to Conrad Hanson—and ourselves as attorneys for him."

Resolving every doubt as to the facts in favor of the position of plaintiff, nevertheless we are compelled to the conclusion that consideration for plaintiff's signature appears as a matter of law. Plaintiff made a contract with the defendants releasing her claims against them in return for defendants' paying to her husband a substantial sum, considered by all at the time to be fair and adequate compensation for damages incurred to his property and person. It is not necessary that the consideration be paid directly to the contracting party. This question was settled in West v. Kidd, 184 Minn. 494, 496, 239 N. W. 157, wherein this precise question was determined. The court said:

"Plaintiff says she received no part of the proceeds of the draft. It must be borne in mind that the plaintiff and her husband claimed to have a cause of action in tort against the defendant and claimed unliquidated damages on that account. Therefore, even if the plaintiff received no part of the consideration for herself, and even if in arriving at the amount for which the plaintiff and her husband were willing to settle their respective causes of action against the defendant, there were taken into consideration only those items which the husband was entitled to recover under the law, neverthe-

less, by joining with her husband in releasing both causes of action she obtained for her husband a settlement of the defendant's alleged liability and the defendant suffered a detriment by the payment to her husband, it is not less a consideration sufficient to support the release than would be a benefit running directly to her."

To amplify the above statement would add nothing to the settled law. Plaintiff seeks to distinguish the latter decision on the basis that the draft was made payable to only the husband. A reading of the decision lends no support to the contention that it turned on that point. The differentiation urged is a distinction without a real difference.

■ Nor do we believe that there was any real issue on the question of mutual mistake in the signing of the release. The affidavits in support of the defendants' motion to strike plaintiff's reply clearly show that defendants made the settlement with the view of obtaining a release from each of the parties concerned in the accident. The release was intended to and did discharge defendants "from any and all claims, demands, causes of action and suits-at-law * * * against them." It included "claims for all personal injuries, whether the same be known or unknown to us at the present time," and was signed by all four occupants of the automobile.

We have no quarrel with plaintiff's contention that where the parties, with their attention directed to known injuries, contract for a settlement with reference thereto, in ignorance of other and more serious injuries, both parties believing the known injuries are the only ones sustained, there is mutual mistake, and a release executed under such mistake is no bar to an action for the unknown injuries. Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Simpson v. Omaha & C. B. St. Ry. Co. 107 Neb. 779, 186 N. W. 1001. It is also true that this court has indicated that even though a release expressly includes unknown injuries, such expression is not conclusive, and mutual mistake may be shown for the purpose of vitiating the agreement. Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642. However, where the parties expressly and in-

tentionally settle for unknown injuries, the release is incontestable. Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119; Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642. We believe that this is the case here, and the release involved was not made under mutual mistake.

A clearer case of settlement for unknown injuries than this cannot well be imagined. Defendants settled with plaintiff's husband with the view of quieting all possible claims arising out of the accident. The agreement would not have been entered into if the occupants of the car had not signed the release. It is quite clear that they were not contracting with plaintiff with respect to known injuries she had suffered. They did not have her examined nor did they contact her for the purpose of discussing and determining whether she had suffered injuries or the extent and nature thereof. They were obviously interested in getting from her a release as to all claims she might have had, before paying the claim of her husband. Under these circumstances, it is clear that defendants could be laboring under no mistake or misapprehension in making the settlement. While it may be that plaintiff was mistaken as to her injuries at the time of the signing of the release, the mistake, if any, was not shared by defendants, and therefore, as a matter of law, there was clearly no mutual mistake. As the unilateral mistake under which plaintiff was laboring was in no way due to the fraud or other misconduct of defendants or their agents, that fact likewise is no ground for vitiating the release.

■ The court did not err in finding that there was no issue to be tried concerning plaintiff's mental competency to enter into the agreement. All that the reply alleges is that plaintiff is "informed and believes" that her judgment was impaired at the time she signed the release and that she was not mentally competent to know the effect of the release. So far as the printed record shows, the reply is not verified. In her affidavit in opposition to defendants' motion to strike out the reply, plaintiff in a lengthy recital sets out her injuries, admits she discussed them with her husband's attorney, Yaeger, denies certain parts of Yaeger's affidavit, denies receiving any consideration, claims mutual mistake, and that she was un-

aware of her legal rights; but nowhere in the affidavit does she make any reference to her mental incompetency at the time of the signing of the release. On the other hand, the affidavit of attorney Yaeger shows that at the time the release was signed, which was more than nine months after the accident, plaintiff talked over the matter of the settlement with Yaeger and at that time she appeared to be in good mental and physical health. Considering all the facts, we are compelled to conclude that under the peculiar circumstances of this case there was no true issue as to plaintiff's mental competency.

The order is affirmed.