# MORRIS E. ARONOVITCH v. MORRIS G. LEVY, SR.[1]

January 2, 1953.

No. 35,828.

*Durham & Swanson,* for appellant.
*Hall, Smith & Hedlund* and *L. Howard Bennett,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order of the trial court granting plaintiff a new trial for errors of law occurring in the court's charge to the jury.

Plaintiff, who was then employed by the Dyckman Hotel as a piano player, was injured on August 21, 1945, when he slipped and fell down a stairway on his way to a barbershop in the hotel. After the fall, defendant called Dr. Emil Robitshek, who helped plaintiff up the stairs, and they then went to the office of Dr. R. G. Allison, where X rays were taken. Plaintiff then went to the office of Dr. Robitshek in the same building. According to plaintiff, he was informed by Dr. Robitshek that there were no broken bones and that he could go back to work that night. Plaintiff went to his home and was unable to work for a period of ten days. On August 24 he went to the Deauville Inn, near Brainerd, to rest and convalesce. The next day he consulted Dr. Eyers at Pequot Lakes, Minnesota, who took further X rays and gave the plates to plaintiff. Dr. Eyers advised plaintiff to procure a rib binder. When plaintiff returned to Minneapolis he took Dr. Eyers' X-ray plates to Dr. Robitshek and in-

formed him that Dr. Eyers had found two fractured ribs and arthritis in the spine. Plaintiff testified that Dr. Robitshek then remarked that everybody gets arthritis. On November 10, 1945, plaintiff took the X-ray plates originally prepared by Dr. Allison to Dr. Walter H. Ude an X-ray specialist. He also consulted Dr. Daniel F. Noonan on November 23. Since neither Doctors Eyers, Ude, or Noonan were called as witnesses in the trial of the case, we have no way of knowing what their findings were. Plaintiff returned to his employment on August 31, 1945. On September 26, 1945, he called at the law offices of Durham & Swanson, who then represented defendant's insurer. Durham offered him $50 and his medical expenses in settlement, but plaintiff refused to accept the offer. On January 3, 1946, he again called at the offices of Durham & Swanson, and he then accepted the offer and signed a release, which contains the following provision, among other things:

"Know All Men by These Presents, that the Undersigned do (es) hereby acknowledge receipt of Seventy-five and 48/100 in addition to $22.50 Dollars ($75.48) paid direct to Dr. Allison and $15.00 paid direct to Dr. Robitshek, which sum is accepted in full compromise settlement and satisfaction of, and as sole consideration for the final release and discharge of, all actions, claims and demands whatsoever, that now exist, or may hereafter accrue, against Central Hanover Bank & Trust Company and or Morris G. Levy and Dyckman Hotel and any other person, corporation, association or partnership charged with responsibility for injuries to the person and property of the Undersigned, and the treatment thereof, and the consequences flowing therefrom, as a result of an accident, casualty or event which occurred on or about the 21st day of August 1945 at or near stairway leading to barber shop of Dyckman Hotel and for which the Undersigned claims the above named persons or parties are legally liable in damages; which legal liability and damages are disputed and denied, and;

\*    \*    \*    \*    \*

"The Undersigned Agrees, as a further consideration and inducement for this compromise settlement, that it shall apply to all unknown and unanticipated injuries and damages resulting from said accident, casualty or event, as well as to those now disclosed."

Plaintiff's employment was terminated on January 28, 1946. On that date he consulted Dr. Frank R. Gratzek, an X-ray specialist, who found that plaintiff had an ununited fracture of the eighth rib; that the sixth, seventh, and eighth vertebrae were wedge-shaped and irregular; that there was considerable curvature of the spine; and that there was evidence of arthritis. He could not say whether the wedge-shaped vertebrae were due to trauma or natural causes.

On October 10, 1946, plaintiff consulted Dr. J. P. Korchik, complaining of pain over the lower right chest, pain over the sixth, seventh, and eighth vertebrae, and pain across the lower back. Dr. Korchik was of the opinion that plaintiff had sustained an injury to the soft tissue; that such injuries had not cleared up because of plaintiff's abnormal posture and his overweight; and that the soft tissue bruising which he found on October 10 was attributable to the fall.

This action was commenced on May 17, 1949. In the meantime, Dr. Robitshek had died on June 23, 1947, and Dr. Allison had died on March 20, 1946. Plaintiff based his right to recover on defendant's negligence. Defendant interposed the release signed by plaintiff as a bar to the action. Plaintiff, in his reply, admitted the signing of the release but sought to avoid it on the ground that it was executed as the result of a mutual mistake of the parties concerning the nature of plaintiff's injuries and also on the ground of constructive fraud. The court left it to the jury to determine whether plaintiff was chargeable with laches, among other things. The jury returned a verdict for defendant. Upon motion of plaintiff, the court set aside the verdict and granted a new trial exclusively upon errors of law in submitting the question of laches to the jury. This appeal followed from the order so granting a new trial.

■ It is the position of defendant that where a party bringing an action for the recovery of damages for a tort, the time for the

commencement of which action is governed by our statute of limitations, seeks equitable relief by way of avoidance of a release the doctrine of laches applies to such equitable relief. Plaintiff contends, and the court relying upon our decision in Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642, concluded, that laches has no application where the main action is brought within the time prescribed by our statute of limitations.

Where a party is seeking a legal remedy upon a legal right, we have held that the doctrine of laches has no application and that the remedy will be barred only by the statute of limitations. Morris v. McClary, 43 Minn. 346, 46 N. W. 238; O'Mulcahey v. Gragg, 45 Minn. 112, 47 N. W. 543; State·v. Brooks-Scanlon Lbr. Co. 122 Minn. 400, 142 N. W. 717.

■ We have held in a number of cases that where an action is governed by the statute of limitations the doctrine of laches has no application. 4 Dunnell, Dig. & Supp. § 5354; Kremer v. Lewis, 137 Minn. 368, 163 N. W. 732; Greenfield v. Hill City Land, Loan & Lbr. Co. 141 Minn. 393, 170 N. W. 343; Vadnais v. State, 224 Minn. 439, 28 N. W. (2d) 694.

We have applied the same rule to equitable actions, at least unless it could be shown that the delay would result in substantial injury to innocent parties. In McRae v. Feigh, 143 Minn. 241, 246, 173 N. W. 655, 657, we said:

"* * * A court of equity will not bar a claim, enforceable in an action at law, for a delay of less than the statutory period, at least, unless it be shown that the enforcement of the claim will result in substantial injury to innocent parties."

In Helvetia Copper Co. v. Hart-Parr Co. 142 Minn. 74, 171 N. W. 272, 767, we indicated that the doctrine might be applied to an action involving the disaffirmance of a settlement if it conclusively appeared that the defendant was prejudiced by a delay. There is much respectable authority holding that in equitable actions the doctrine of laches applies even though the action is governed by a statute of limitations. Walsh, Equity, p. 474; 2 Pomeroy, Equity

242

Jurisprudence (5 ed.) § 419d; Patterson v. Hewitt, 195 U. S. 309, 319, 25 S. Ct. 35, 37, 49 L. ed. 214, 218.

The doctrine of laches is an equitable doctrine intended to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay. The application of the doctrine must depend to a large extent on the facts of each case. In the application of the doctrine to an equitable defense interposed in a legal action governed by a statute of limitations, we believe the correct rule is stated in Morris v. McClary, 43 Minn. 346, 347, 46 N. W. 238, where we said:

"* * * where only strictly legal rights are in controversy, no neglect in asserting the right, short of the time prescribed by the statute of limitations, will bar the appropriate legal remedy. If the holder of the legal title seeks equitable relief, unreasonable delay in asserting his right may, under the equitable rule as to laches, bar his claim to such equitable relief in less time than would, under the statute of limitations, bar his legal remedy. But, where there is no estoppel, his legal remedies will be barred only by the statute of limitations."

In Bausman v. Kelley, 38 Minn. 197, 207, 36 N. W. 333, 336, we said:

"* * * He [who seeks equitable relief] cannot invoke equitable relief and at the same time insist that the court shall not regard any fact in the conduct or relations of the parties which may show his suit to be inequitable and against conscience."

And in State v. Brooks-Scanlon Lbr. Co. 122 Minn. 400, 404, 142 N. W. 717, 719, we said:

"* * * the pith and substance of the doctrine of laches is unreasonable delay in enforcing a known right." Followed in Briggs v. Buzzell, 164 Minn. 116, 204 N. W. 548, and Cantieny v. Boze, 209 Minn. 407, 296 N. W. 491, 173 A. L. R. 321.

■ While evidence of prejudice is not always essential before the doctrine of laches may be applied—

"It is a circumstance of importance, in determining whether a plaintiff has been guilty of laches, that the situation of the parties has changed, or that material witnesses have died, or that because of lapse of time evidence has otherwise been lost, so that the ascertainment of the essential facts is made difficult, and the exact facts upon which the rights of the parties depend must necessarily be in doubt." Sweet v. Lowry, 123 Minn. 13, 16, 142 N. W. 882, 883, 47 L.R.A.(N.S.) 451.

■ The trial court was of the opinion that Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642, was controlling in the instant case and that under that decision it was error to submit the issue of laches to the jury. Apparently the trial court construed what we said in that case to mean that the doctrine of laches is never applicable to an equitable defense interposed in a legal action governed by the statute of limitations. We do not believe that the case so holds. The action was brought for the recovery of damages for injuries sustained in an automobile collision. Defendant interposed a release signed by plaintiff as a defense, much as in the case now before us. Plaintiff sought avoidance of the release on the ground of mutual mistake. The trial court granted defendant's motion for judgment on the pleadings. In affirming, we said with respect to the application of the doctrine of laches (198 Minn. 25, 268 N. W. 643):

"We believe it is clear that plaintiff signed the release in question. It is equally clear that the question of laches has no proper place in this discussion. Plaintiff brought her action within six years of the time of the accident, the period of the statute of limitations, *and* there is no ground upon which the claim of laches can be based." (Italics supplied.)

We simply held that, under the facts in that case, there was no ground upon which the doctrine of laches could be applied.

In this case, the only ground for the application of the doctrine of laches, as shown by the record, would be the death of Dr. Allison on March 20, 1946, and the death of Dr. Robitshek on June 23, 1947.

It does appear that some changes had been made in the stairway on which plaintiff slipped, but it does not appear from the record when such changes were made. Under these circumstances, no prejudice could have resulted by the delay after the death of the two doctors. During the interval between the signing of the release and the death of the doctors, plaintiff sought medical advice from other doctors. It was not until some time after the release had been signed that he became convinced that he had suffered injuries other than those for which he now claims he signed the release. It could hardly be claimed that plaintiff was guilty of such unreasonable delay up to the time of the death of the last of the two doctors that he should be held guilty of laches. Before the doctrine of laches may be applied on account of prejudice resulting from the death of witnesses, it must appear that such prejudice has been the result of the unreasonable delay. Where, as here, the death of witnesses occurs before there is any unreasonable delay, such death, standing alone, cannot be used as the basis for the application of the doctrine.

Inasmuch as defendant's position was not altered after the death of these doctors and inasmuch as we conclude that there was no unreasonable delay up to the time of the death of the last of the two doctors, there is no ground for application of the doctrine of laches under the facts in this case. It follows that the result of the trial court's order is right, even though the order may have been based upon the wrong theory as we view our decision in Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642, *supra,* and, therefore, we will affirm.

■ Defendant next contends that, even though the court was in error in submitting the issue of laches to the jury, plaintiff has no cause of action as a matter of law and, hence, that error in the instruction is not sufficient to warrant a new trial. This contention is based on the claim that the evidence will not sustain a finding of either mutual mistake or constructive fraud.

We have carefully examined the evidence upon which plaintiff relies for the establishment of grounds for the avoidance of the release. While the evidence is not too convincing, we believe that

it is sufficient to present a question of fact for the jury's determination.

Some confusion exists in our cases as to when a release such as the one we have before us may be avoided on the ground of mutual mistake or constructive fraud.

In Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 112, 179 N. W. 642, 644, we said:

"* * * The release does not expressly include unknown injuries. But we are not prepared to say that even if it had, it would have availed against the evidence here which clearly proved no such injuries to have been within the knowledge or contemplation of the parties. * * *

* * * * *

"Of course when parties intentionally settle for unknown injuries received in an accident, the release obtained is incontestable. But the cases where they deliberately undertake so to do must be rare."

In Hanson v. Northern States Power Co. 198 Minn. 24, 27, 268 N. W. 642, 644, we said:

"* * * where the parties, with their attention directed to known injuries, contract for a settlement with reference thereto, in ignorance of other and more serious injuries, both parties believing the known injuries are the only ones sustained, there is mutual mistake, and a release executed under such mistake is no bar to an action for the unknown injuries. Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Simpson v. Omaha & C. B. St. Ry. Co. 107 Neb. 779, 186 N. W. 1001. It is also true that this court has indicated that even though a release expressly includes unknown injuries, such expression is not conclusive, and mutual mistake may be shown for the purpose of vitiating the agreement. Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642. However, where the parties expressly and intentionally settle for unknown injuries, the release is incontestable. Althoff v. Torrison, 140 Minn. 8, 167

N. W. 119; Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642."

In Serr v. Biwabik Concrete Aggregate Co. 202 Minn. 165, 174, 278 N. W. 355, 361, 117 A. L. R. 1009, we said:

"It is settled law in this state and elsewhere that, at least in the absence of express provisions to the contrary, a settlement for known injuries does not bar a later action for existing but unknown ones, there being mutual mistake as to the latter. Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; 48 A. L. R. 1462; 15 Minn. L. Rev. 805. Also, that where the release expressly so provides, subsequently discovered unknown injuries will not support an action for its avoidance. Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642. Further, that unknown and unexpected consequences of a known injury will not bring a case within the rule permitting avoidance of a release on the ground of mutual mistake. Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643."

Also, the rule prohibiting the admission of parol evidence to vary the terms of a written contract does not prevent proof of fraud or mistake. Nygard v. Minneapolis St. Ry. Co. *supra;* 3 Pomeroy, Equity Jurisprudence (5 ed.) § 858.

We perceive the rule in this state to be that, where the parties contract for a release of all claims for known injuries, the release is a bar to recovery for unknown consequences of known injuries but is not a bar to recovery for unknown injuries not within the contemplation of the parties at the time of contracting for such release. Further that, even though a release expressly covers unknown injuries, it is not a bar to an action for such unknown injuries if it can be shown that such unknown injuries were not within the contemplation of the parties when the settlement was agreed upon, but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding. Whether the parties intended to release to cover unknown injuries is usually a question of fact.

Affirmed.