JAMES BOXELL v. CONTINENTAL CASUALTY COMPANY.

82 N. W. (2d) 223.

March 29, 1957—No. 37,014.

318

*Youngquist, Furber, Comaford, Danforth & Clarkson,* for appellant.
*William W. Fink,* for respondent.

DELL, CHIEF JUSTICE.

This is an action to recover benefits under a health and accident insurance policy. Following denial of defendant's motion for summary judgment, the case was tried by a court and jury and a verdict was returned for the plaintiff in the sum of $3,733.26. The defendant appeals from the order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

In May 1951 the plaintiff purchased an insurance policy from the defendant. The policy became effective May 21, 1951, and continued in force until the final premium-due date, which was June 1, 1952. It was subject to renewal with the consent of the defendant. The policy provided for payment of indemnity for sickness contracted and commencing at least 30 days after the effective date of the policy and causing loss of time commencing while the policy was in force. In February 1952 the plaintiff became sick and was confined to the Midway Hospital of St. Paul. His sickness was diagnosed as "ventricular strain" and he was advised by his physician that he was

suffering from a heart condition. He promptly, and within 10 days, wrote a letter to defendant stating that he had suffered a heart attack, was in the Midway Hospital of St. Paul, and expected to be laid up for more than 30 days, and he requested that the defendant send him claim forms to be filled out.

Following the submission of his claim, plaintiff received several payments by checks under the policy until September 1952. All of these checks contained printed endorsements on the reverse side stating that endorsement by the payee constituted a release to the defendant of the account stated on the face of the check, and in each instance the face of the check contained a statement that it was "payment of indemnity to" a specified date. About June 1, 1952, defendant informed the plaintiff that his policy was cancelled and was unrenewable. The final check from the defendant, dated September 2, 1952, contained a printed form on the reverse side that endorsement by the payee constituted full payment, satisfaction, and release of any and all claims which the plaintiff then might have or thereafter might have against the defendant due to the sickness commencing on or about the date stated on the face of the check, which was February 28, 1952, or any loss that might result from such sickness. Plaintiff endorsed and cashed the check.

Plaintiff thereupon, upon the advice of his doctor, resumed part-time work but with continued symptoms of poor health. He lost a great deal of weight, became fatigued, coughed almost constantly, and was able to work only two or three hours a day and then only with great effort. He lost his appetite and strength and continued to grow weaker until finally he couldn't work at all. In the summer of 1953 he was advised by another physician to "take this package here and send the sputum over to the University of Minnesota." After that was done he was told by a nurse of the city of St. Paul that he should go to Ancker Hospital but she did not tell him that he had tuberculosis. At Ancker Hospital he was examined by its medical director of tuberculosis, Dr. Joseph N. Gehlen. Dr. Gehlen was a specialist in tuberculosis and had been in that service at Ancker Hospital for more than 25 years. In August 1953 plaintiff,

for the first time, was informed that he was suffering from tuberculosis. Prior to that time he thought his sickness was due to heart trouble. He was then in such poor physical condition, due to the ravages of the disease, that he was at once confined to Ancker Hospital where he remained totally disabled and was still confined at the time of the trial in 1956.

Plaintiff commenced this action in May 1954 to recover additional benefits under the policy. The parties stipulated that, in the event plaintiff was entitled to any recovery, the amount of such recovery should be the sum of $3,733.26.

■ Defendant's first contention is that the policy does not cover or properly include any disability due to tuberculosis since this disease did not cause any loss of time commencing while the policy was in force. Plaintiff's medical expert, Dr. Gehlen, testified that in his opinion the plaintiff had tuberculosis continually from February 1952 until the time of the trial; that plaintiff's condition was at all times disabling and rendered him unfit for work. Thus there is ample evidence to support the conclusion that the tubercular condition was, in fact, the true cause of plaintiff's sickness in February 1952 and not "ventricular strain" as originally diagnosed; that, therefore, the tuberculosis did, in fact, cause loss of time commencing while the policy was in force. It does not seem inappropriate to state that from a fair and impartial analysis of the record it seems clear that plaintiff should not have returned to work in September 1952; that he did so upon the advice of his physician only because of an incorrect diagnosis; that he was, in fact, unable to work within the accepted meaning of that word; that it was injurious to his health to return to work; and that, had his disease been correctly diagnosed in February 1952, he would not have been permitted to return to work at all. In fairness to the first attending physician it should be said, upon the record here, that there is a similarity of symptoms between ventricular strain or heart disease and tuberculosis.

■ Defendant next contends that there was a lack of performance of conditions precedent in that plaintiff did not give any notice that

he was suffering from tuberculosis until the commencement of this action in 1954. The policy provides:

"4. Written notice * * * of sickness on which claim may be based must be given * * * within ten days after the commencement of disability from such sickness.

"5. Such notice given by or in behalf of the Insured * * * with particulars sufficient to identify the Insured, shall be deemed to be notice to the Company."

Plaintiff did give written notice of sickness within the time prescribed when he wrote defendant that he had suffered a heart attack. There is no requirement in the policy or the applicable law that the notice of sickness must state the medically correct cause of such sickness with the risk of loss of benefits if the diagnosis is incorrect. Under the policy it was only necessary that notice of "sickness" be given to the company within the prescribed time and this was done. Hence, the provisions of the policy, relating to notice, were fully complied with by the plaintiff.

■ Defendant's next contention is that the release contained in the endorsement on the back of the check dated September 2, 1952, which plaintiff signed, bars any recovery in this action. The defendant argues that, since the plaintiff did not interpose any responsive pleading by way of avoidance of the allegation of the release as set forth in the defendant's answer, the release is, therefore, admitted and constitutes a complete bar to the plaintiff's cause of action. Rule 7.01 of the Rules of Civil Procedure provides:

"There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if leave is given under Rule 14 to summon a person who was not an original party; and a third-party answer, if a third-party complaint is served. *No other pleading shall be allowed,* except that the court may order a reply to an answer or a third-party answer. Demurrers, pleas, and exceptions for insufficiency of a pleading shall not be used." (Italics supplied.)

Rule 8.04 provides:

"Averments in a pleading to which a responsive pleading is required, other than those as to amount of damage, are admitted when not denied in the responsive pleading. *Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.*" (Italics supplied.)

It is, therefore, clear that no responsive pleading was required or permitted to the defendant's answer and, therefore, any allegations in such answer, including the purported release, should be taken as denied or avoided and became issues at the trial.

■ Defendant also contends that if the release is in issue it constitutes a sufficient defense to the action as a matter of law. It is doubtful whether the release, in any event, would be binding because of a lack of consideration, it appearing from the evidence that the amount paid to the plaintiff on September 2, 1952, was the exact undisputed amount owing plaintiff on that date under the terms of the policy. But we need not decide the issue on that basis since from the evidence the jury could reasonably find that tuberculosis was an unknown illness, not within the contemplation of the parties at the time the release was executed. Under our decision in Aronovitch v. Levy, 238 Minn. 237, 56 N. W. (2d) 570, 34 A. L. R. (2d) 1306, the release would, therefore, not constitute a bar to an action to recover benefits for a period of disability caused by tuberculosis.

■ Defendant next contends that the verdict in favor of plaintiff for $3,733.26 is contrary to the evidence and the law. Under this contention defendant asserts that the testimony of plaintiff's medical expert, Dr. Joseph N. Gehlen, is based merely on conjecture and speculation. Dr. Gehlen was plaintiff's attending physician at all times from August 1953 to the time of the trial in 1956. He had examined the X-rays taken at the Midway Hospital in February 1952 as well as those taken at Ancker Hospital. A part of his testimony was based upon medical history, X-rays, and his own examination, and a part of it on a properly phrased hypothetical question. As pointed out, he was a physician of wide experience in the disease of

tuberculosis. He gave it as his opinion that plaintiff "had far advanced pulmonary tuberculosis" and that he had been suffering from the disease since February 28, 1952, the date that his ailment was originally diagnosed as ventricular strain; that the X-rays taken in February 1952 showed the tubercular condition; also that in his opinion there was no question that plaintiff had been ill with tuberculosis from 1952 to the time of the trial. In cross-examination he also testified:

"Q. So that your conclusion that there was an active tubercular condition in February 1952 is entirely assumption and conjecture, is it not?

"A. No; I wouldn't say that. I think it is an opinion brought on by long years of experience with this disease.

"Q. In other words, you base it not on facts you actually observed but on assumptions that you make from the questions that were put to you?

"A. No; I based it on the history obtained from the patient, what I found from examination and the clinical evidence that I got later on.

\* \* \* \* \*

"Q. Did you disagree with the fact that he performed work of some kind after he was discharged from the hospital and after his doctor informed him that he had better return to work?

"A. Do I disagree with that?

"Q. Yes.

"A. Yes; my opinion was that he had tuberculosis at that time, he should not have gone back to work.

"Q. In other words, your viewpoint as you expressed it here, if you had been his doctor you would have told him he should not have gone back to work?

"A. That would be my opinion."

From a review of this witness' testimony as a whole, as we must consider it, it is clear that his opinion was based on accepted medical and legal premises, was sufficiently definite, and offers an adequate basis for the verdict. As far as the amount of damages is concerned, the stipulation of the parties controls.

We have considered the other contentions of the defendant and feel that they are not of sufficient importance to require discussion. On the record here we can find no sound basis, either on the facts or under the law, for holding that plaintiff should not be paid the amount due him under his policy as reflected by the amount of the verdict. In any event, a careful review of the record in its entirety amply supports the verdict and discloses no basis whatever for either a reversal or the granting of a new trial.

Affirmed.