Rick PETERSEN, et al., Respondent,

v.

DeKALB PFIZER GENETICS, f/k/a DeKalb AgResearch, Inc., etc., Appellants.

No. C3-84-888.

Court of Appeals of Minnesota.

Sept. 25, 1984.

Lawrence W. Frank, Estebo, Schnobrich & Frank, Redwood Falls, for respondents.

Juan A. Alsace, Prindle, Maland, Sellner, & Stennes, Montevideo, for appellants.

Considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

DeKalb Pfizer Genetics and DeKalb AgResearch, Inc. (jointly "DeKalb"), appeal from a grant of summary judgment for respondents Rick and Mike Petersen on a breach of contract claim. The Petersens recovered $5,413.71 plus interest for claimed underpayment on a contract. We affirm.

## FACTS

Respondents Rick and Mike Petersen, two farmers and recent agricultural business graduates, entered into a "seed corn grower agreement" dated April 14, 1981, with appellant DeKalb. Under the contract, the Petersens agreed to plant approximately 120 acres of corn land in Redwood County with seed chosen and supplied by DeKalb. DeKalb agreed to pay the Petersens for accepted seed corn in two install-ments according to a formula contained in the contract. The formula essentially multiplies a figure called "total bushels to market" by a set market price. The market price is not in dispute. "Total bushels to market" is a composite figure, and a reduction of one of the factors in the composite, "designated bushels," is in dispute.

DeKalb admits that the Petersens properly planted and cared for the field. Hailstorms, however, struck Redwood County sometime during the 1981 growing season. DeKalb claims that damage done by these storms entitled it to reduce the designated bushels factor under the contract.

According to DeKalb, some time after the grain was harvested and measured, a DeKalb employee determined that the total bushels accepted from the Petersens should be reduced because of hail damage. DeKalb made the adjustment by reducing the contract's designated bushels factor by 20 percent, from 85 to 68. DeKalb calculated the Petersens' payment using the reduced designated bushels factor.

DeKalb made the first of the two payments to the Petersens on December 7, 1981. The Petersens received a letter from DeKalb dated December 8, 1981, stating that a 20 percent reduction in their "designated bushels to market" had been made "because of the reduced yield of your seedcorn field due to the hailstorms this past growing season." In the letter DeKalb offered to discuss the payment computation with the Petersens. The Petersens did not respond and cashed the payment check. DeKalb sent the Petersens their second payment on March 17, 1982, again reflecting the 20 percent reduction. Again, the Petersens cashed the check.

The Petersens commenced suit on March 30, 1983, for the difference between the payment calculated using the original designated bushels factor (85) and the payment using the reduced factor (68). The claimed underpayment was $5,413.71.

## ISSUE

Did DeKalb present any evidence to justify its unilateral 20 percent reduction of a

factor used in calculating payment under the seed corn grower agreement?

## ANALYSIS

■ The contract at issue is written and contains no ambiguities or internal contradictions. Thus, the construction of the contract is a question of law for the court. *See e.g. Donnay v. Boulware*, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). Summary judgment for the Petersens is proper only if no inference from any evidence presented can justify, under any contract provision, DeKalb's unilateral 20 percent reduction of the contract's designated bushels factor to compensate for hail damage. This court must view the evidence in the light most favorable to DeKalb, the party against whom the motion was granted. *See Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

Two contract provisions cover hail damage. Paragraph 9.c. allows a settlement "to be determined on a percentage basis by Plant Manager and Grower" if the seed crop is "damaged by hail and accepted by DeKalb." Paragraph 11.d. allows a reduction in the designated bushels factor in the "event of yield reductions due to unfavorable growing conditions."

■ DeKalb asserts that an issue of material fact exists as to whether the Petersens' silent acceptance of the two payments calculated with the lower designated bushels factor constitutes an agreement that would entitle DeKalb to reduce the price for hail-damaged crops under paragraph 9.c. of the contract. Even if the silent acceptance could be construed to be an agreement under the contract, a material issue of fact is not presented. The settlement procedure of paragraph 9.c. comes into operation only when the *seed crop* is *damaged* by hail. Although DeKalb presented evidence that hailstorms occurred during the 1981 growing season, it presented no evidence of damage to the Petersens' field or to their seed crop.

Even if it could be inferred that the Petersens' corn plants suffered damage, DeKalb has presented no evidence of any damage to, or diminution in quality of, the seed crop it accepted. Thus, DeKalb has presented no evidence that would entitle it to reduce the price under paragraph 9.c.

Paragraph 11.d. allows a reduction of the designated bushels factor in the event of "reduced yields due to unfavorable growing conditions." There is a condition precedent, however, for such a reduction: that "the commercial corn yield in the Grower's county, as reported by the USDA State Crop Reporting Service, be reduced to 70 percent of the average of the ten preceding years." DeKalb has admitted that the commercial corn yield in Redwood County in 1981 was greater than in any of the ten preceding years, so this condition clearly was not met.

Because DeKalb has not provided any evidence that would justify a unilateral reduction of the designated bushels factor under either paragraph 9.c. or paragraph 11.d., summary judgment for the Petersens was proper.

■ DeKalb also argues that the equitable defense of laches bars the Petersens' suit because the Petersens did not sue until approximately one year after the last payment under the contracts.

The Minnesota Supreme Court has held "where only strictly legal rights are in controversy, no neglect in asserting the right, short of the time prescribed by the statute of limitations, will bar the appropriate legal remedy." *Morris v. McClary*, 43 Minn. 346, 347, 46 N.W. 238, 238 (1890), *quoted with approval in Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). The statute of limitations for a breach of contract action is six years. Minn.Stat. § 541.05, subd. 1(1) (1982). Thus, the Petersens' suit was timely.

## DECISION

Summary judgment awarding the Petersens $5,413.71 plus interest from December

7, 1981, was appropriate because the contract was unambiguous, and DeKalb presented no evidence justifying, under any contract provision, its unilateral 20 percent reduction of a factor used in calculating payment under the contract. The equitable defense of laches does not bar the Petersens' suit.

Affirmed.