Marilyn V. BONGARD, Respondent,

v.

Frederick H. BONGARD, Appellant.

No. C5-85-1227.

Court of Appeals of Minnesota.

Jan. 28, 1986.

Review Denied March 27, 1986.

Bruce P. Wyant, Samuel C. Tripp, Wyant & Morgeson, P.A., Bloomington, for respondent.

Robert A. Nicklaus, Mary Kendall Adler, Nicklaus, Monroe, Fahey & Cooper, Chaska, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from an order denying a motion for a new trial following entry of judgment for respondent in her action for fraud brought against her former husband. We reverse.

## FACTS

Many of the facts of this case are stated in a prior appeal, *Bongard v. Bongard,* 342 N.W.2d 156 (Minn.Ct.App.1983), which involved an attachment order in this action.

Respondent Marilyn Bongard's claim is that her former husband, appellant Fred Bongard, concealed from her his alleged interest in a partnership with his brother Roger at the time of their divorce proceedings, and that she relied on his representations in agreeing to a stipulation and judg-ment entered in the North Carolina dissolution action.

The dissolution judgment was entered on April 12, 1973. The parties, however, had separated in 1967, and each had initiated divorce proceedings in Minnesota in the interim.

Appellant is a career air force officer who retired in 1966, and came to Minnesota where his brother Roger owned a hardware and implement store in Chanhassen. A joint checking account was established, and appellant went to work for the business, believing that he had a one-half partnership interest in it. A farm in New Germany was purchased in Roger Bongard's name, although appellant testified that the $10,-000 down payment was made from his pre-marital assets, the proceeds of insurance policies he cashed in. A service garage in New Germany was also purchased in Roger's name, although appellant also understood this to be partnership property.

Marilyn, meanwhile, was living in North Carolina with most of the couple's children. She visited Minnesota several times, but testified that she "did not discuss business with Fred." Although her two older boys were also working periodically in the Bon-gard business, and she personally went there several times, she did not inquire about Fred's business arrangements with his brother.

Marilyn had suspicions that Fred may have been concealing assets from her, but claims never to have inquired about a partnership interest. At one point in her testimony, she admitted that she suspected he had a one-half interest in the business. Her answer in the North Carolina action, filed in June of 1968, stated as follows:

(19) On March 3, 1967, the plaintiff left for Minnesota. The defendant was informed and believes that the plaintiff had bought a ½ interest in the Bongard Implement Company in Chan[h]assen, Minnesota, which was an appliance and implement sales business.

The trial court found misrepresentation of assets in three sworn statements by Fred:

1) An answer to a 1967 Minnesota divorce proceeding in which he stated he had no real property or business interest in Minnesota, and minimal personal property;

2) A 1971 affidavit and financial statement mentioning no partnership interest; and

3) A 1972 affidavit stating he had no interest in the farm and merely rented the New Germany garage.

Marilyn testified that she relied on appellant's affidavits, including the representation that he had no business interests in Minnesota, in signing the North Carolina consent decree.

In 1975, approximately two years after the decree was entered, Roger Bongard brought an unlawful detainer action against appellant in Minnesota. In his answer, appellant alleged an oral partnership agreement. He also brought an independent action for an accounting of the partnership and a dissolution. At some point, a claim of tortious assault was added, based on a 1978 incident.

In December, 1975, appellant's attorney wrote to Marilyn in North Carolina, informing her of the action. The letter stated as follows:

> Fred's position is simple. He retired from the Air Force, with an oral understanding with his brother that they were going into partnership. He came to Minnesota, threw most of his assets and efforts over the period of the partnership into the partnership and has realized almost nothing, the income having been retained by Roger who now refuses to admit that there was ever a partnership.

The letter offered full disclosure of Fred's finances to Marilyn. Marilyn testified that she took this letter to her attorney, who said it was "noncommittal" and they would have to wait until it went to court.

The partnership lawsuit was settled on December 8, 1981, Roger agreeing to pay appellant $85,000. Half of this amount was allocated to the partnership claim, and half to the assault claim.

Marilyn brought this action for misrepresentation and for vacating the dissolution judgment in March of 1982, alleging an intentional concealment of the partnership interest.

The trial court found all the elements of misrepresentation, and awarded Marilyn one-half of the net settlement, after deducting Fred's attorneys fees of about $19,000 incurred in obtaining the settlement.

## ISSUE

Is the action for fraud barred by the statute of limitations or the equitable doctrine of laches?

## ANALYSIS

Appellant moved to dismiss this action based on the statute of limitations and on laches. This motion was founded primarily on the letter from attorney Lamkin in December, 1975, disclosing the partnership action. This action was brought in March of 1982.

Minn.Stat. § 548.14 (1984), the statute under which appellant brought her action, establishes a three-year limitations period for setting aside a judgment procured by fraud.

■ Although the dissolution judgment was entered in North Carolina, the Uniform Enforcement of Judgments Act provides that foreign judgments may be filed in Minnesota, and further states that such a judgment is subject to the same "procedures, defenses and proceedings" for reopening a judgment as a Minnesota judgment. Minn.Stat. § 548.27 (1984). The action to set aside the judgment, therefore, is governed by the Minnesota statute, Minn. Stat. § 548.14.

■ The statute of limitations begins to run on an action to set aside a fraudulently procured judgment from the date the fraud or misrepresentation is discovered. Minn.Stat. § 518.14. The letter from attorney Lamkin in December, 1975, provided clear notice to respondent of appellant's partnership claim, and thus of any misrep-

resentations made by him in the course of the divorce proceedings.

 The discovery of the misrepresentation did not require establishment of the partnership claim by appellant in the partnership litigation. It was a misrepresentation for appellant to omit the partnership claim from his financial statement, regardless of his brother's resistance to the claim. *Cf. Johnson v. Johnson,* 243 Minn. 403, 405, 68 N.W.2d 398, 400 (1955) (concealment in divorce proceeding of partnership agreement reduced to a writing omitting partners' names). Since the asset concealed was a claim subject to dispute, respondent's discovery of its concealment did not require that the claim be litigated and reduced to judgment.

The equitable doctrine of laches has no application where an action is governed by a statute of limitations and legal rights alone are in controversy. *Aronovitch v. Levy,* 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). As the supreme court noted in *Johnson,* however, Minn.Stat. § 548.14 was enacted to make the equitable remedy for vacating fraudulently procured judgments by independent action concurrent with the legal remedy by motion. *Johnson,* 243 Minn. at 406, 68 N.W.2d at 400. Courts in other jurisdictions have held that though the statute of limitations has expired, the absence of laches nevertheless may save a claim which is equitable in nature. *E.q., Lothian v. City of Detroit,* 414 Mich. 160, 324 N.W.2d 9 (1982). There is no such authority in Minnesota.

Without deciding this issue, we note a lack of facts supporting an equitable extension of the limitations period. Not only was the statutory three-year period far exceeded, but respondent's suspicions before the divorce plainly extended to a possible partnership claim, which she alleged in pleadings filed in 1968.

## DECISION

Respondent's action for fraud was barred by the three-year statute of limita-tions for setting aside a judgment for fraud.

Reversed.