**Dudley M. PAGE, Plaintiff,**

v.

**Earl G. MEANS, Sr., and Earl G. Means, Jr., Defendants.**

**Myrtle M. PAGE, Plaintiff,**

v.

**Earl G. MEANS, Sr., and Earl G. Means, Jr., Defendants.**

**Civ. A. Nos. 628–F, 629–F.**

United States District Court
N. D. West Virginia,
at Fairmont.
March 22, 1961.

Russell L. Furbee (Furbee & Hardesty), Fairmont, W. Va., for plaintiffs.

Herschel Rose, Fairmont, W. Va., for defendants.

HARRY E. WATKINS, Chief Judge.

These are actions involving an automobile accident, wherein a husband and wife, as plaintiffs, allege negligence on the part of the defendant. Some time after the accident occurred, plaintiffs herein signed a general release of any

claims arising out of the accident. Consideration for the release was a check for $100. It is the validity of this release which this Court is called upon to decide. All issues of both law and fact concerning the release were submitted to the Court for decision.

A large part of the facts surrounding the release have been stipulated by counsel, and a deposition of Dudley M. Page, one of the plaintiffs, has been filed. In addition, a hearing was held on the matter of the release on December 12, 1960, at which time additional testimony of Dudley M. Page was received, and various exhibits have been filed.

The pertinent facts which have been stipulated are as follows: The automobile accident out of which plaintiffs' claims arose occurred on June 6, 1959. In one automobile were Dudley M. Page and Myrtle M. Page, the plaintiffs in this case, and the other automobile was driven by Earl G Means, the defendant herein. Both Dudley Page and Means carried their public liability insurance with Federal Mutual Insurance Company, of Decatur, Illinois. Page, however, carried collision insurance on his own automobile with the Great American Indemnity Company. This was a $100 deductible policy.

Because Federal Mutual Insurance Company afforded public liability coverage to both of the parties involved in the collision, the adjustment of the claims of Dudley and Myrtle Page against Means was assigned to John Roan, Inc., an insurance adjustment company having offices in Fairmont, West Virginia, Hagerstown, Maryland, Baltimore, Maryland, and other cities.

John Roane, Inc., assigned the personal injury aspect of the Page claims to its Hagerstown, Maryland, office. The property damage aspect of the Page claims was assigned to the Fairmont, West Virginia, office because that loss, in the amount of $850.45, less $100 deductible, had been subrogated by Mr. Page to his collision carrier, Great American Indemnity Company, which was being represented in the matter of its subrogation rights by Adjustment Service Company, another insurance adjustment company with its offices in Fairmont, West Virginia.

On or about July 24, 1959, R. A. Coonan, an adjuster employed by the Hagerstown, Maryland, office of John Roane, Inc., went to Frederick, Maryland, and interviewed plaintiffs at their home. At that time Dudley Page explained that he had incurred certain medical expenses, and that a sweater worn at the time of the accident by Myrtle Page had been ruined. After considerable discussion of these various features, plaintiffs signed and delivered to Mr. Coonan a general release of all claims arising from the accident of June 6, 1959, for a consideration of $100. Defendant herein and his father were the parties released by the paper. It was understood at the time between plaintiffs and Coonan that this release was not to cover such of Dudley Page's claim for property damage to his car as had been subrogated by him to Great American Indemnity Company. Coonan does not recall whether it was intended that the release cover Page's deductible amount of $100. However, the insurance company did understand that the release was not to cover the deductible amount. Thus the only question before this Court is whether a valid release was executed by Dudley and Myrtle Page with regard to bodily injuries.

After the meeting, Federal Mutual Insurance Company issued its draft, dated July 28, 1959, in the amount of $100, payable to Dudley M. Page and Myrtle Page, which draft was delivered and accepted. The draft has not been cashed or presented for payment, nor was it prior to the institution of these suits on February 12, 1960, tendered or returned to Federal Mutual Insurance Company. On December 1, 1960, counsel for plaintiffs forwarded the draft to the Hagerstown office of John Roane, Inc., with the explanation that it had not been cashed because there had been a mutual mistake at the time of the signing, and that plaintiffs did not treat the release as valid. On December 2, 1960, the draft was returned to counsel for plaintiffs with the explana-

tion that it was the property of the Pages.

On August 6, 1959, prior to the return of the draft by counsel for plaintiffs, Dudley Page wrote to the Hagerstown office of John Roane, Inc., with relation to the release and the intentions of plaintiffs in executing it. Dudley Page, for the first time, in this letter states that he and Myrtle Page have suffered more serious injuries than they had believed at the time of the execution of the release.

From the deposition and testimony of Dudley Page, it appears that at the time of the accident, plaintiffs had, at their request, been examined by a Dr. Janes, in Fairmont, and had been x-rayed at his direction at Fairmont General Hospital. Dr. Janes submitted written reports of his findings, which are in evidence as plaintiffs' exhibits. On June 12, six days after the accident, and prior to the date of the release, they were examined by Captain John C. McDonnel, Jr., the Army Post Surgeon at Fort Detrick Dispensary, in Frederick, Maryland. The written report of Dr. McDonnel to plaintiffs stated that x-rays revealed that Myrtle Page had sustained a compression fracture of the eleventh thoracic vertebra. Pursuant to a suggestion of Dr. McDonnel, Myrtle Page was then examined by a United States Navy physician, Dr. Dawson, at the Orthopedic Clinic of the United States Naval Hospital at Bethesda, Maryland. This examination was also prior to the release. Dr. Dawson reported in writing that he did not believe that a compression fracture of the spine had occurred. Immediately after Dr. Dawson's examination, and before the release was executed, plaintiffs were given to understand that it was Dr. Dawson's opinion that there was no traumatic injury involved and that Myrtle Page's condition was principally the result of arthritis with post-traumatic aggravation. These three doctors were all selected by plaintiffs, and reports made to plaintiffs of the result of such examinations. Plaintiffs did not submit such medical reports to the defendant's insurance company prior to or at the time the release was executed. Prior to the execution of the release, Dudley Page had talked to a lawyer informally about the matter, but had not taken it up with a lawyer at that time to handle his case. Under these circumstances the release was executed, and the check was delivered and accepted.

█ Plaintiffs contend that the general release pleaded by the defendants is void and not enforceable and does not constitute a defense for the reason that at the time of the execution of the release, plaintiffs were entirely ignorant of the serious injuries which Myrtle Page, particularly, had sustained, and that adjuster Coonan was unaware of any injuries sustained by plaintiffs other than what they described to him on July 24, 1959, when plaintiffs executed the release. Plaintiffs contend, therefore, that the release as executed should be voided because of mutual mistake of the parties. Plaintiffs also contend that the release is void because there was no "meeting of the minds" at the time of the execution of the release. Plaintiffs do not contend that there was any fraud or deception practiced by the insurance company or its adjuster in connection with the execution of the release.

There was no mutual mistake of fact at the time of the release. The words of the release itself cover the situation:

"* * * do hereby remise, release, and forever discharge * * * from any and all claims, demands, rights, and causes of action, of whatsoever kind or nature arising from or by reason of any and all *known and unknown, foreseen and unforeseen* bodily and personal injuries, loss and damage to property * * *" (emphasis added).

Thus, it was expressly agreed among the parties that the release was to cover any unknown injuries. There was no mistake by any of the parties. The condition of the plaintiffs at the time of the release has no importance, and neither does their knowledge or lack of knowledge of any existing physical condition. The release covered all injuries, "known or unknown".

As stated in 76 C.J.S. Release § 25:

"A release may be avoided where the releasor can show that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact, material to the release or the agreement to release, as where there was a mutual mistake as to the nature, extent, or degree of gravity of the releasor's injury, *unless it further appears that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished."* (emphasis added.)

See also 45 Am. Jur., Release, § 20; 71 A.L.R.2d § 13, page 160.

There are some cases reported wherein a different view has been taken where the release is similar to the one here. But in such cases the facts were different, in that the evidence affirmatively showed that the releasor had not, in fact, intended to give up his right to recovery for the injuries of which he was not aware, and that the execution of the release was thereby induced by fraud or mistake. 71 A.L.R.2d § 13, page 156. However, I find that in the case at hand, with regard to personal injuries, the releasors intended to give up exactly what was given up in the release.

Plaintiff cites Atlantic Greyhound Lines, Inc., of West Virginia v. Metz, 4 Cir., 70 F.2d 166, for the proposition that a mutual mistake existed in the case under consideration. However, the difference is that in the Greyhound case, there was a mutual mistake of fact, there was a mistake as to what rights were to be released. The Court said, at page 168:

"The evidence clearly shows that, at the time of the execution of the release, both plaintiff and the claim agent were entirely ignorant of the serious abdominal injuries which plaintiff had sustained, *and that the settlement made was intended to cover only the damage to her clothing with compensation for the delay in her journey."*

In the case presently before the Court, the parties agreed that all injuries, known or unknown, were to be released. There appears to be no mistake about that.

Plaintiff also cites the case of Seaboard Ice Company v. Lee, 199 Va. 243, 99 S.E. 2d 721, at page 727, where the court stated:

"The material facts clearly and conclusively show that the minds of the parties did not meet upon the understanding that the consideration mentioned in the release was intended to be in full settlement of the releasee's liability."

The release in the Seaboard case contained similar language to the one under consideration, the words being "injuries known and unknown, resulting or to result from the accident * * *" However, the facts in that case show that the representative of the insurance company felt that the release was "to reimburse Lee (plaintiff) for the examinations and loss of wages" while plaintiff felt the release covered "the doctors examination and the time the truck was out of operation." Neither felt that the release was to cover existing injuries unknown at the time of the accident. In the case at hand there is not sufficient evidence to show that either party had a different understanding of the coverage of the release concerning personal injury than what is stated in the release.

In fact, Dudley Page, in his testimony, repeatedly stated that he believed the release covered personal injuries. He put no limitation on this statement that would contradict the wording of the release. In further clarification of these statements, Dudley Page stated that after the accident he had been advised by friends that in making any settlement he should be sure that he was paid for all pain and suffering incurred by him and Myrtle Page. As further indication of the validity of the release, it is noteworthy that the release was executed by the plaintiffs in reliance on the findings

of their own independent physicians, and that there was no haste in the solicitation or execution of the release. It should also be stated that Dudley Page is an educated man, a graduate of the United States Naval Academy, and a retired Commander in the United States Naval Reserve. It is also significant that this was a compromise settlement and that the defendants, at the time of the execution of the release, denied liability. This was so recognized and acknowledged by the Pages when they signed the release, which stated:

> "It is further understood and agreed that this settlement is the compromise of doubtful and disputed claims, and that the payments are not to be construed as an admission of liability on the part of Earl G. Means nor Earl G. Means, Sr. by whom liability is expressly denied."

Here there was a meeting of the minds of the parties to the release with regard to the personal injuries to plaintiff. Certainly there is not sufficient evidence to show that the parties' minds did not meet on the plan exactly as stated in the release; that the release covered all injuries "known and unknown, foreseen and unforeseen". As to the question of the release applying to property damage to plaintiffs' automobile, it would appear from the stipulation filed by counsel that there was a meeting of the minds to the effect that a claim for such damage was not to be released by the instrument in question.

Plaintiffs also argue very briefly that there was no consideration for the release as the check for $100 received by plaintiffs was never cashed. No cases are cited in support of this theory and it is not sound. Payment by check is just as much consideration in these days of modern banking practices as is payment by currency.

This opinion is adopted as the findings of fact and conclusions of law of this Court. Counsel for defendant may prepare an order according to the views expressed herein.