INA H. SCHMIDT AND ANOTHER v. KENNETH H. SMITH
AND ANOTHER.

216 N. W. 2d 669.

March 29, 1974—No. 44206.

*Grathwol, Ploetz, Oberhauser & Nodland* and *Alan Miles Albrecht*, for appellants.

*Robb, Van Eps & Gilmore* and *Don James Chantry*, for respondents.

Heard before Knutson, C. J., and Otis, MacLaughlin, and Mulally, JJ., and considered and decided by the court.

EDWARD D. MULALLY, JUSTICE.*

This is an appeal from a judgment in favor of defendants.

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

On March 6, 1966, in Waconia, Minnesota, Wilfred H. Schmidt was operating an automobile in which his wife, Ina H. Schmidt, was riding as a passenger. The Schmidt automobile was struck by a car owned by Kenneth H. Smith and driven by David P. Smith.

On March 7, 1966, as a result of the accident, Ina Schmidt sought medical care from Dr. C. V. Carlson, a general practitioner. Dr. Carlson observed that Mrs. Schmidt had soreness in her neck and in both hips. He also noted a history of recurrent acute lumbar back strain dating back to 1951. X-rays of the cervical spine were negative. Treatment advised was entirely "symptomic" with heat and motion.

The Schmidts retained legal counsel relative to this matter not later than April 1966.

The soreness persisted until May 27, 1966, at which time Mrs. Schmidt was complaining of discomfort on left rotation and lateral flexion discomfort in her neck. On July 27, 1966, Mrs. Schmidt was referred by Dr. Carlson to Doctors Scherer, Eichhorn, and Kane, specialists in internal medicine. Their examination report shows that Mrs. Schmidt had some osteoarthritic changes in the thoracic and lumbar spine; that she has a "rare constant dull aching at the base of her neck" which radiates up and across her shoulders; that she has had some numbness involving the fingers of both hands; that she had previously injured her back in a fall 5 years before while employed at General Mills; and that X-rays of the cervical spine were negative. Their diagnosis as of August 8, 1966, was "acute muscular strain" involving the muscles of the neck.

Copies of medical reports were submitted to defendants' insurance company. The defendants' insurance company did not have Mrs. Schmidt medically examined.

On March 4, 1967, Wilfred and Ina Schmidt executed a release, witnessed and notarized by their attorney, which, in con-

sideration of the sum of $2,100, purported to discharge Kenneth and David Smith from any and all claims.[1]

---

[1] The release provides in pertinent part: "That the Undersigned, being of lawful age, for the sole consideration of Two thousand one hundred and 00/100 .............. Dollars ($2,100.00) to the undersigned in hand paid, * * * do/does hereby * * * release, acquit and forever discharge Kenneth Smith and David Smith * * * from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 6th day of March, 1966, at or near Maple Street & Minnesota Highway #5 in Waconia, Minnesota.

"It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefor and intend merely to avoid litigation and buy their peace.

"It is further understood and agreed that all rights under Section 1542 of the Civil Code of California and any similar law of any state or territory of the United States are hereby expressly waived. Said section reads as follows:

" '1542. Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.'

"The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, affect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

"The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made

In May 1967, Mrs. Schmidt again consulted Dr. Carlson and complained of low lumbar back muscle spasm and discomfort. She also complained of pain in the right shoulder, arm, and hand. X-rays of the cervical spine were negative. Dr. Carlson considered the possibility of a cervical disc syndrome and on June 12, 1967, referred her to Dr. Robert C. Stoltz, a neurologist. Dr. Stoltz, in turn, referred her to Dr. John A. Hartwig, an orthopedic surgeon, and on September 25, 1967, a surgical disc removal and spinal fusion C-5 to C-7 was performed.

The Schmidts commenced this action in December 1968, seeking damages totaling $95,000 as a result of the March 6, 1966, collision. In their answer defendants affirmatively allege the release.

Defendants moved for summary judgment under Rule 56, Rules of Civil Procedure, or, in the alternative, for dismissal of plaintiffs' action for failure to prosecute under Rule 41.02. Summary judgment was granted by the trial court, and on December 12, 1972, judgment was entered dismissing the plaintiffs' action.

It is apparent that before plaintiffs can recover there must be an avoidance of the release. Plaintiffs make no claim of fraud or concealment of facts by the defendants. They contend that the disc condition was a separate and distinct injury which was present but unknown at the time they entered into the release. Plaintiffs assert that summary judgment should not have been granted against them because there was a genuine issue of fact. They further contend that they may proceed with their action on the basis of mutual mistake and leave to the jury as fact issues the questions of whether or not an unknown injury was present at the time they executed the release and, if so, whether or not they intended that it be covered.

The standard of review for the granting or denying of summary judgment has been discussed a number of times by this

to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital."

court and is set out in Rule 56.03, Rules of Civil Procedure. First, the court must determine on the basis of all the pleadings, depositions, answers to interrogatories, and admissions on file, together with the filed affidavits, if any, that there is no genuine issue as to any material fact. Secondly, the court must determine which party, if any, is entitled to judgment as a matter of law. In essence, summary judgment permits a determination by the court that there are no genuine issues of fact by consideration of the pleadings and also of facts not contained in the pleadings. This motion does not resolve issues of fact. 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 562. See, also, Whisler v. Findeisen, 280 Minn. 454, 160 N. W. 2d 153 (1968); Sauter v. Sauter, 244 Minn. 482, 70 N. W. 2d 351 (1955); 10A Dunnell, Dig. (3 ed.) § 4988b.

There are at least two policy considerations that this court must balance in determining when avoidance of personal injury releases should be permitted. One compelling argument in favor of a liberal policy is that the individual who lacks knowledge of his injuries because of fraud, concealment of facts, or mistake may sign a release and thereafter become a public charge. See, Larson v. Stowe, 228 Minn. 216, 219, 36 N. W. 2d 601, 603, 8 A. L. R. 2d 455, 458 (1949). However, it is also true that the law favors compromises, and there must be a zone of free action within which differences may be terminated by the parties with the complete assurance that the matter is final. "To permit them [release settlements] to be vacated except for the most compelling reason creates 'uncertainty, chaos, and confusion' with respect to future dispositions, and is a disservice to other litigants whose matters are thereby delayed." Simons v. Schiek's, Inc. 275 Minn. 132, 139, 145 N. W. 2d 548, 553 (1966) (Mr. Justice Otis, dissenting).

The trend in this area has been toward considering personal injury releases as being sui generis and toward a policy of liberality in allowing the avoidance of such releases on grounds

of fraud or mistake as to the extent or nature of injuries. Annotation, 71 A. L. R. 2d 82, 88.

It is clear that an unknown and unexpected consequence that results from an injury that is known at the time of executing the release is not a sufficient basis for avoiding it. This court said in Richardson v. Chicago, M. & St. P. Ry. Co. 157 Minn. 474, 478, 196 N. W. 643, 644 (1924):

"* * * This was not an unknown injury, but an unknown and unexpected consequence of the injury, and does not bring the case within the rule. To avoid such a release, the rule requires clear and convincing proof that a substantial injury, which was not discovered until after the settlement, had in fact been sustained in the accident and existed at the time of the settlement. That unknown and unexpected consequences resulted from known injuries is not sufficient."

This language was quoted with approval in Newman v. Fjelstad, 271 Minn. 514, 519, 137 N. W. 2d 181, 184 (1965).

If there is to be avoidance of a release on the ground of mistake, it must be based upon a finding of unknown injuries that were in existence and were not within the contemplation of the parties when the settlement was agreed upon. But if the parties did in fact intentionally agree upon a settlement for unknown injuries, the release will be binding. In Serr v. Biwabik Concrete Aggregate Co. 202 Minn. 165, 174, 278 N. W. 355, 361, 117 A. L. R. 1009, 1015 (1938), this court stated:

"It is settled law in this state and elsewhere that, at least in the absence of express provisions to the contrary, a settlement for known injuries does not bar a later action for existing but unknown ones, there being mutual mistake as to the latter. Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; 48 A. L. R. 1462; 15 Minn. L. Rev. 805. Also, that where the release expressly so provides, subsequently discovered unknown injuries will not sup-

port an action for its avoidance. Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642."

In Aronovitch v. Levy, 238 Minn. 237, 246, 56 N. W. 2d 570, 576, 34 A. L. R. 2d 1306, 1313 (1953), this court summarized the law as follows:

"We perceive the rule in this state to be that, where the parties contract for a release of all claims for known injuries, the release is a bar to recovery for unknown consequences of known injuries but is not a bar to recovery for unknown injuries not within the contemplation of the parties at the time of contracting for such release. Further that, even though a release expressly covers unknown injuries, it is not a bar to an action for such unknown injuries if it can be shown that such unknown injuries were not within the contemplation of the parties when the settlement was agreed upon, but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding. Whether the parties intended to release to cover unknown injuries is usually a question of fact."

It is stated in 16 Dunnell, Dig. (3 ed.) § 8375, p. 349, that "[w]hether a release was executed through * * * mistake is a question for the jury, unless the evidence is conclusive," citing Sundvall v. Interstate Iron Co. 104 Minn. 499, 116 N. W. 1118 (1908); Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119 (1918); Mix v. Downing, 176 Minn. 156, 222 N. W. 913 (1929).

While this court in proper cases continues to recognize and protect the right of a releasor to avoid the release of a claim for unknown injury when such release was not intended, it has also recognized that the evidence as to finality can be conclusive when the release is executed under circumstances evincing basic fairness and both releasor and releasee clearly indicate in the instrument an intent to release all claims for both known and unknown injury. Among factors to be considered in determining the validity and extent of a release are the following: (a) The length of period between the injury and the settlement; (b) the amount

of time elapsed between the settlement and the attempt to avoid the settlement; (c) the presence or absence of independent medical advice of plaintiff's own choice before and at the time of the settlement (Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642 [1936]; Page v. Means, 192 F. Supp. 475 [N. D. W. Va. 1961]); (d) the presence or absence of legal counsel of plaintiff's own choice before and at the time of the settlement (Schoenfeld v. Buker, 262 Minn. 122, 114 N. W. 2d 560 [1962]; Viskovich v. Walsh-Fuller-Slattery, 16 App. Div. 2d 67, 225 N. Y. S. 2d 100 [1962], affirmed, 13 N. Y. 2d 1100, 246 N. Y. S. 2d 632, 196 N. E. 2d 267 [1963]); (e) the language of the release itself (Hanson v. Northern States Power Co. *supra*); (f) the adequacy of consideration (Dansby v. Buck, 92 Ariz. 1, 373 P. 2d 1 [1962]; Denton v. Utley, 350 Mich. 332, 86 N. W. 2d 537 [1957]; Clancy v. Pacenti, 15 Ill. App. 2d 171, 145 N. E. 2d 802, 71 A. L. R. 2d 77 [1957]); (g) the competence of the releasor; and (h) whether the injury complained of by the releasor was an unknown injury at the time, of the signing of the release or merely a consequence flowing from a known injury.

Hanson v. Northern States Power Co. *supra,* is a case in which this court determined the waiver was complete as to all claims. There, a release was signed by the parties which read in part:

"It is understood that by this release we intend to include claims for all personal injuries, whether the same be known or unknown to us at the present time.

"Dated March 3, 1931." Cases and Briefs, 198 Minn. 24, R. 13.

In that case the plaintiff commenced an action 4 years after the release was signed and this court affirmed the granting of a judgment for the defendants on the pleadings. This court said:

"A clearer case of settlement for unknown injuries than this cannot well be imagined. Defendants settled with plaintiff's husband with the view of quieting all possible claims arising out of the accident. The agreement would not have been entered into if the occupants of the car had not signed the release. It is quite

clear that they were not contracting with plaintiff with respect to known injuries she had suffered. They did not have her examined nor did they contact her for the purpose of discussing and determining whether she had suffered injuries or the extent and nature thereof. They were obviously interested in getting from her a release as to all claims she might have had, before paying the claim of her husband. Under these circumstances, it is clear that defendants could be laboring under no mistake or misapprehension in making the settlement. While it may be that plaintiff was mistaken as to her injuries at the time of the signing of the release, the mistake, if any, was not shared by defendants, and therefore, as a matter of law, there was clearly no mutual mistake." 198 Minn. 28, 268 N. W. 644.

While neither the release instrument nor the circumstances surrounding its execution are ordinarily sufficient of themselves to prevent the avoidance of a release of unknown injury, we must recognize that there are cases in which the terms of the instrument, coupled with the circumstances surrounding its execution, make the intended finality of the release of all claims for known and unknown injury so apparent that there can be no room for further dispute. We hold that this is such a case.

There is no genuine issue as to a material fact, and the defendants are entitled to judgment as a matter of law.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.