KEVIN MYERS, A MINOR, BY NORMAN MYERS
AND ANOTHER, HIS PARENTS AND NATURAL
GUARDIANS, v. FECKER COMPANY AND ANOTHER.

252 N. W. 2d 595.

April 1, 1977—No. 46735.

*Willette, Kraft, Walser & Nelson, Paul A. Nelson,* and *Molter, Runchey & Louwagie,* for appellants.

*Lasley, Gaughan, Reid & Stich* and *John F. Angell*, for respondents.

Heard before Yetka, Scott, and Winton, JJ., and considered and decided by the court en banc.

CRANE WINTON, JUSTICE.*

This is an appeal from an order of the district court denying a petition to vacate an earlier order approving a settlement on behalf of a minor and to declare the settlement and releases executed in support of it null and void. Because this court agrees with the district court that petitioners have failed to present sufficient grounds to justify vacating the settlement and avoiding the releases, the district court order must be affirmed.

On November 4, 1960, Kevin Myers, who was then 28 months old, was struck by a truck owned by defendant Fecker Company and driven by defendant Marvin Bahn, and as a consequence he suffered extensive injuries including a crushed chest, abdomen, and pelvis, contusions of the left lung, and hemorrhaging in the area of the loin muscles. From those injuries Dr. John G. Lohmann, the attending physician, stated in an affidavit dated May 1, 1961, that Kevin made a "miraculous recovery." Dr. Lohmann in the same affidavit further stated that Kevin had no permanent disability but that he had referred the boy to a neurologist for an evaluation of residual brain damage. In an affidavit dated April 28, 1961, Dr. G. W. Smith, the neurologist, stated that he could "identify no specific evidence of neurological residual." He did indicate in his affidavit, however, that Kevin's family had noted that he had "a tendency to swing the right foot a little as he gets tired" and that he also "tends to have some soreness of the right leg, * * * primarily in the right thigh, if he plays hard."

In April and May 1961, some 5 months after the date of his injuries, Kevin's parents entered settlement negotiations with

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

representatives of respondents' automobile insurer. Those discussions resulted in an agreement to accept $5,200 in settlement of all claims.[1] Because Kevin's parents had not retained counsel to represent them in the settlement negotiations, the lawyer representing respondents and their insurer retained independent counsel to represent them in court at the hearing on the petition for approval of the settlement which was held as required by Minn. St. 540.08.

At the hearing both parents affirmed that they realized no further claims could be made by reason of Kevin's injuries. The court then approved the settlement by an order dated May 9, 1961, which authorized and directed Kevin's parents to accept $5,200 "in full settlement and release of all claims, demands, actions and causes of actions, and/or suits of any kind in behalf of said minor, Kevin Myers, resulting from or in any way connected with the accident referred to."

Pursuant to the court's order, Norman and Mary Myers executed a release and indemnity agreement, which after the preambles provided:

"Now THEREFORE, in consideration of the sum of Five Thousand Two Hundred and No/100 ($5,200.00) Dollars, paid to us in our individual capacities and as parents and natural guardians of Kevin Myers, a minor, by Fecker Company and Marvin Bahn and The Lumbermans Mutual Casualty Company of Chicago, Illinois, in compromise and settlement of said claim and of all liability of said Fecker Company and Marvin Bahn in connection with the premises, we, Norman Myers and Mary Myers, in

---

[1] The settlement amount was apportioned as follows:

| | |
|---|---|
| Medical expense | $1,294.65 |
| Travel expense | 481.60 |
| Mary Myers' wages lost in caring for Kevin | 680.00 |
| Future medical and travel expense | 73.60 |
| Savings account held in trust for Kevin | 2,670.15 |
| | $5,200.00 |

our individual capacities and as parents and natural guardians of Kevin Myers, a minor, do release and forever discharge Fecker Company and Marvin Bahn and The Lumbermans Mutual Casualty Company of Chicago, Illinois, of and from all claims, demands, actions or causes of action whatsoever including all as such have been, now are, or hereinafter might be connected with or based upon injuries sustained by said minor, Kevin Myers, and/or ourselves, in any act of negligence or otherwise of said Fecker Company and Marvin Bahn in connection therewith.

"The undersigned Norman Myers and Mary Myers, further declare that the terms of the settlement are fully understood and voluntarily accepted for the purpose of making full and final compromise, adjustment and settlement of any and all claims, disputed or otherwise, on account of injuries, known or unknown, and damages herein mentioned.

"For the consideration aforesaid, the undersigned hereby stipulate and agree to hold harmless and indemnify the said releasees from any and all claims and action, which may at any time hereinafter be made or instituted against them for the purpose of enforcing any claim for or on behalf of said minor for damages resulting from or in any way arising out of said accident, including the cost of defense in such action or actions.

"This release is executed by the undersigned in our individual capacities and intended to cover any and all loss of services and damage of any kind sustained by us personally and as parents and natural guardians of Kevin Myers, a minor, pursuant to the Order of the District Court of Lyon County, dated the 9th day of May, 1961, made after a petition was filed by the undersigned with said Court setting forth the injuries and damage and directing the undersigned to execute said release in accordance with the terms and conditions set forth in the petition and Order of this Court.

"Dated this 9th day of May, 1961, at Windom, Minnesota.

"/s/ NORMAN MYERS (In my individual capacity and as parent (father) and natural guardian of Kevin Myers, a minor.)

"/s/ MARY MYERS (In my individual capacity and as parent (mother) and natural guardian of Kevin Myers, a minor.)

"IN PRESENCE OF:

/s/ R. T. RODENBERG

/s/ J. C. WILTROUT"

They also executed a second release dated May 9, 1961, which stated:

"We, Norman Myers and Mary Myers, in our individual capacities and as parents and natural guardians of Kevin Myers, a minor, in consideration of Five Thousand Two Hundred and No/100 ($5,200.00) Dollars, receipt of which is hereby acknowledged and pursuant to Order of the District Court dated May 9, 1961, hereby release and forever discharge Fecker Company and Marvin Bahn from all claims, demands, actions and suits by reason of any damage, loss or injury known or unknown, which heretofore has been or hereafter may be sustained by us or by said minor on account of an accident on or about the 4th day of November, 1960, at or near North Hiawatha Street, Pipestone, Minnesota. We understand that part of the above consideration is for unknown injuries and damages that may appear in the future.

"As a further consideration for the above payment we hereby agree to indemnify and protect from all damage and expense the said Fecker Company and Marvin Bahn in the event of any claim by or on behalf of said minor, for injuries or damages arising or growing out of said accident.

"IN WITNESS WHEREOF, We now set our hands this 9th day of May, 1961.

"/s/ NORMAN MYERS

"/s/ MARY MYERS

"IN PRESENCE OF:

/s/ R. T. RODENBERG

/s/ J. C. WILTROUT"

In her affidavit filed in support of the motion to vacate the order approving the settlement, Kevin's stepmother, Faye Myers,

who had married Kevin's father on November 1, 1969, testified that she had not been aware of Kevin's involvement in an accident in November 1960. She also testified that when he was in the eighth grade, she "noticed that he did not pick his feet up when walking; he tended to drag the feet on the ground as the step of an old man." Kevin then, she said, would make an effort to correct the way he walked. She further stated that in 1971 Kevin complained of hip pain when playing football and received medical advice to discontinue football that fall. In 1972, Faye Myers observed that Kevin's hip was "out of joint and completely lopsided." In January 1973, Dr. R. A. Klassen, an orthopedic surgeon, examined Kevin and made a diagnosis of dysplasia of the hip secondary to post-traumatic closure of the triradiate cartilage of the acetabulum which he undertook to correct surgically. In Dr. Klassen's opinion "the problem with the acetabulum was directly caused by the original trauma he sustained in November of 1960."

As the basis for their motion to vacate the order approving the settlement, petitioners asserted that the "settlement made in May of 1961 was entered into under a mutual mistake of fact as to the actual injuries sustained by the Minor and that the attending physician did not foresee the serious consequences of the condition which was diagnosed by Dr. Klassen in January of 1973, which required extensive medical treatment."

Whether and under what circumstances a settlement and release of a minor's personal injury claim may be set aside has been considered by this court on a number of occasions. It is a basic premise that settlement of disputed claims is to be favored. Schmidt v. Smith, 299 Minn. 103, 216 N. W. 2d 669 (1974). Equally well established is the premise that vacating a stipulation of settlement rests largely within the discretion of the trial court, and the court's action in that regard will not be reversed unless it be shown that the court acted in such an arbitrary manner as to frustrate justice. Schoenfeld v. Buker, 262 Minn. 122, 131, 114 N. W. 2d 560, 566 (1962). The premise applies with

equal force to orders approving settlements on behalf of minors. The party seeking to establish a basis for avoiding a settlement has the burden of proof. Ibid. The decision to set aside a settlement for a minor rests largely within the discretion of the trial court. See, Larson v. Stowe, 228 Minn. 216, 219, 36 N. W. 2d 601, 603 (1949). In the instant case the district court declined to do so.

Petitioners concede that an unknown or unexpected consequence of an injury that is known when a settlement was made does not present a sufficient basis for avoiding the settlement and the attendant releases. See, Jeffries v. Gillitzer, 302 Minn. 402, 225 N. W. 2d 17 (1975). Rather, they claim that the condition for which Kevin was examined and treated in 1973 should be characterized as an injury that was unknown at the time the parties agreed to the settlement and that the settlement, therefore, was made under a mutual mistake of fact and, hence, should be set aside.

This court has held that the trial court may vacate a settlement on behalf of a minor even if its terms purport to give a release for unknown as well as known injuries "if, in the cautious exercise of its discretion, it appears that separate and distinct injuries were sustained by the minor which, as a matter of mutual mistake, were not contemplated or considered in the settlement." Larson v. Stowe, 228 Minn. 216, 219, 36 N. W. 2d 601, 603. More recently, however, this court has also declared that if the parties intended a release to be final with respect to unknown as well as known injuries, it will be held to be binding. Schmidt v. Smith, *supra*; Jeffries v. Gillitzer, *supra*; and Barilla v. Clapshaw, 306 Minn. 437, 237 N. W. 2d 830 (1976).

An examination of the record does not by any means convincingly demonstrate Kevin's injuries to have been unknown and not within the parties' contemplation when they made the settlement. Dr. Smith, to whom Kevin had been referred for a neurological examination, reported in his affidavit filed in support of the settlement when it originally was proposed to the trial

court that Kevin's family had noted a tendency for him to have difficulty with and soreness in his right leg when he exerted himself and became tired. Dr. Smith also stated, however, that he could not discern in his office examination any abnormal function in Kevin's right leg. In his affidavit, which petitioners filed with their motion to vacate the order approving the settlement, Dr. Klassen stated it was his opinion based on the history of Kevin's injury that the problem for which he treated Kevin was directly caused by the original trauma Kevin sustained in November 1960. That in sum is the evidence presented in support of petitioners' contention. At best it is not free from ambiguity, and from it inferences can be drawn either way concerning whether the condition of Kevin's leg was known or unknown to the parties when the settlement was made. It cannot, therefore, be said that petitioners have sustained their burden of proving that the injury was unknown when the settlement was approved.

An assumption that the injury was unknown at the time of the settlement, however, places petitioners in no stronger position, unless they can establish that there was no understanding or intention to give a final release with respect to unknown as well as to known injuries. After reviewing the records and evidence, this court cannot say that petitioners have shown that the parties neither had an understanding nor intended to give final releases with respect to unknown as well as known injuries. Norman Myers testified that he understood at the time the claims were settled that the settlement could be opened should further injuries become manifest. Notwithstanding that testimony, both Norman Myers and Kevin's mother testified at the court hearing in support of their petition for approval of the settlement in 1961 that they knew they could make no further claims for injuries on Kevin's behalf, and then both signed the two releases, each of which expressly covered unknown as well as known injuries. Upon such a state of the record, this court cannot find that the district court erred in concluding that petitioners failed to present grounds on which the settlement and releases can be avoided.

The circumstances in which the settlement was made have also been considered. Although petitioners were not represented by counsel in the negotiations, Norman Myers testified that he had weighed the advantages and disadvantages of retaining a lawyer to commence suit and had concluded that settlement without suit would be more advantageous both financially and otherwise. The district court has also noted that petitioners were represented at the settlement hearing by a lawyer whom they did not retain and who was retained in their behalf by counsel for respondents. Petitioners, however, have not shown that either their lack of representation in the negotiations or their representation at the settlement hearing by counsel not chosen by them resulted in either unfairness or prejudice. Nor do any of the other circumstances surrounding the settlement evince unfairness.

Although it has been said that a more liberal rule is followed in proceedings to set aside settlements of personal injury claims entered into on behalf of minors than in other cases, McGovern v. Lutz, 242 Minn. 397, 65 N. W. 2d 637 (1954), a rational and factually sound basis for doing so must be established by one seeking that relief. No such basis has been demonstrated here.

Accordingly, the order denying petitioners' motion to vacate the order approving the settlement must be affirmed.

Affirmed.