## 21011

Kathy GECY, Respondent, v. The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Carolyn Rebecca Harper, and H. Lamar Harper, Appellants.

(257 S. E. (2d) 709)

438

*Joseph R. Young,* of *Young, Clement & Rivers,* Charleston, *for appellants.*

*John E. Parker,* of *Murdaugh, Peters, Parker & Eltzroth,* Hampton, *for respondent.*

July 25, 1979.

GREGORY, Justice:

Respondent Kathy Gecy brought this action against appellants The Prudential Insurance Company of America (Prudential), Carolyn Rebecca Harper, and H. Lamar Harper to rescind a release on the ground of mutual mistake of a material fact. The lower court granted Mrs. Gecy's motion for summary judgment and set aside the release. We reverse.

On July 26, 1975, the automobile in which Mrs. Gecy was riding was struck in the rear by an automobile owned by Mr. Harper and driven by his daughter Carolyn. As a result of the collision Mrs. Gecy sustained personal injuries to her neck and back.

Mrs. Gecy was treated by Dr. H. L. Laffitte of Allendale who told her she had suffered neck and back strain that would clear up with time. Dr. Laffitte referred Mrs. Gecy to Dr. H. Sherman Blalock, an orthopedist, of Augusta, Georgia. Dr. Blalock confirmed Dr. Laffitte's diagnosis and told Mrs. Gecy that she had no permanent injuries and that the pain in her neck and back would eventually go away.

Mrs. Gecy, acting through her attorney Doyet A. Early, III, negotiated a settlement with Prudential, the Harpers' insurer. The settlement was negotiated by letter and by telephone. Prudential did not require an independent medical examination but was furnished with copies of Mrs. Gecy's medical reports. Prudential mailed Mrs. Gecy a release which she and her husband Robert Gecy executed on January 24, 1976. Prudential paid Mr. and Mrs. Gecy twenty-five hundred ($2,500.00) dollars in settlement of their

claims against the Harpers. The release reads in part as follows:

## RELEASE OF ALL CLAIMS

Know all men by these presents, that the Undersigned does hereby acknowledge receipt of *two thousand five hundred* dollars *$2,500.00* which sum is accepted in full compromise settlement of, and as sole consideration for the final release and discharge of all actions, claims' and demands whatsoever, that now exist or may hereafter accrue, against *Lamar Harper*.

\* \* \* \* \*

The Undersigned Agrees, as a further consideration and inducement for this compromise settlement, that it shall apply to unknown and unanticipated injuries and damages resulting from said accident, casualty or event, as well as to those now disclosed.

\* \* \* \* \*

Mrs. Gecy's problems with her neck and back continued after she executed the release and in March 1977 she consulted Dr. Kenneth W. Carrington, a neurosurgeon, of Augusta, Georgia. Dr. Carrington performed a myelogram examination of her spine and diagnosed a ruptured lumbar disc. Dr. Carrington testified that this was a permanent injury that would possibly require surgical treatment.

Mrs. Gecy initiated this action in June 1977 to set the release aside on the ground of mutual mistake of a material fact.

Both parties moved before the lower court for summary judgment under Circuit Court Rule 44. The trial judge granted summary judgment for Mrs. Gecy and this appeal by Prudential and the Harpers followed.

On appeal from an order of the lower court granting or denying a motion for summary judgment, this court will review the evidence and all reasonable inferences therefrom

in the light most favorable to the party opposing the motion. Summary judgment should be granted only when it is clear there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hyder v. Jones,* 271 S. C. 85, 245 S. E. (2d) 123 (1978).

An action to set aside a release on the ground of mutual mistake is a proceeding in equity. *Turner v. Washington Realty Co.,* 128 S. C. 271, 122 S. E. 768 (1924). As this case was heard by the trial judge without a reference, we may find the facts in accordance with our own view of the preponderance of the evidence. *Townes Assoc. Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

This appeal may be resolved without determining whether the parties negotiated a settlement while laboring under a mutual mistake of fact regarding the nature and extent of Mrs. Gecy's injuries. Thus, for the purposes of this appeal we will assume that the damage to Mrs. Gecy's lumbar disc was an unknown injury and that both parties mistakenly believed Mrs. Gecy had suffered only non-permanent neck and back strain.

A clear and correct statement of the law applicable to the avoidance of a release for personal injuries on the ground of mistake was summarized by the Supreme Court of Minnesota in *Schmidt v. Smith,* 216 N. W. (2d) 669 (1974) as follows:

If there is to be avoidance of a release on the ground of mistake, it must be based upon a finding of unknown injuries that were in existence and were not within the contemplation of the parties when the settlement was agreed upon. But if the parties did in fact intentionally agree upon a settlement for unknown injuries, the release will be binding. 216 N. W. (2d) at 672.

See also: *Myers v. Fecker Co.,* 252 N. W. (2d) 595 (Minn. 1977); *Marshall v. Cundiff,* 211 Va. 673, 180 S. E. (2d)

229 (1971) ; *Sloan v. Standard Oil Co.,* 177 Ohio St. 149, 203 N. E. (2d) 237 (1964) ; Anno. 71 A. L. R. (2d) 82; 76 C. J. S. *Release* § 25; 66 Am. Jur. (2d) *Release* § 32.

We agree with this statement of the law and adopt it as the rule in this State.

Here, the parties agreed upon a settlement after deliberate negotiations. Mrs. Gecy was represented by counsel and she executed the release at her own convenience outside the presence and without the influence of Prudential's agent. The release is contained wholly on the face of one piece of paper and plainly states that subsequently discovered unknown injuries are covered by the release. While we recognize that equity may look beyond the wording of the release to determine whether the parties actually intended the release to cover subsequently discovered unknown injuries, *Sloan v. Standard Oil Co., supra;* 30 C. J. S. *Equity* § 47; 27 Am. Jur. (2d) *Equity* § 35, Mrs. Gecy did not ask the lower court to exercise its equity power in this fashion. Mrs. Gecy neither alleged in her complaint nor offered evidence to establish that the release was not intended to cover unknown injuries. On this record we can only conclude that the parties intended that all claims for injuries would be relinquished.

In view of the parties' agreement that the release would cover unknown injuries, the lower court erred by granting respondent's motion for summary judgment and by denying appellants' motions for summary judgment.

Accordingly, the order of the lower court granting respondent's motion for summary judgment is reversed and the case is remanded for entry of summary judgment for appellants.

Reversed and remanded.

Lewis, C. J., and Littlejohn and Rhodes, JJ., concur.

Ness, J., dissents.

Ness, Justice (dissenting):

I am unable to agree with the majority's assertion that respondent Gecy intended to relinquish all unknown, future claims resulting from the accident; therefore, I respectfully dissent. However, I would reverse and remand the case to the trial court for a disposition on the merits.

The majority's conclusion that "the parties intended that all claims for injuries would be relinquished" is supported only by the terms of the release. The record contains convincing evidence that Ms. Gecy did not intend to release a claim for the herniated disc, the existence of which was completely unknown at the time the release was executed. The settlement was for an amount grossly inadequate for the injuries actually sustained, albeit unknown at the time of negotiation and execution.

In *Herndon v. Wright,* 257 S. C. 98, 184 S. E. (2d) 444 (1971), this Court recognized a cause of action for rescission of a release based on mutual mistake. I would carry the reasoning of *Herndon* one logical step further and hold that the mutual mistake of Ms. Gecy and Prudential concerning the gravity of her injuries may, upon a trial, entitle her to rescission. As stated in *Ranta v. Rake,* 421 P. (2d) 747, 751 (Idaho 1967):

"The majority and the more modern view, while recognizing the policy of encouraging out-of-court settlements of personal injury claims, permits a releasor to avoid a release where unknown injuries existed at the time the release was executed though the release invariably is broad enough to encompass unforseen injuries and though the release was honestly obtained without fraud, overreaching or undue influence on the part of the releasee."

See also 71 A. L. R. (2d) 82.

The persuasive rationale behind permitting rescission in proper personal injury releases was recognized in *Clancy v. Pacenti*, 145 N. E. (2d) 802, 805 (Ill. App. 1957) :

"In such cases it is not an article of commerce that is involved, but the human mind and body, still the most complicated and mysterious of all the things that are upon or inhabit the earth. Here, mistakes are easily made and the consequences are more serious than in any other of the affairs of man."

Nevertheless, a release should not be interpreted loosely. The language should constitute a significant though not controlling circumstance in determining the parties' intentions; another important consideration is the party who drafted the document. The burden of proof on the issue is upon the one seeking to avoid the sweeping language of the release, to establish by clear and convincing evidence "that he did not know and could not know of the later revealed injuries, and that different injuries are involved rather than unanticipated consequences of known injuries." *Mangini v. Mc-Clurg*, 249 N. E. (2d) 386, 393 (N. Y. 1969).

I do not propose to open the proverbial floodgates to recurrent challenges in court of releases honestly negotiated. Rather, I would provide equitable relief in the relatively small number of cases where it is unjust to hold a release to bar a later action because the injuries proved to be more severe than could reasonably have been foreseen at the time of execution.

This was not a proper case for the granting of summary judgment. Genuine issues of material fact exist regarding the parties' intentions at the time of signing the release. Whether the parties truly intended a release to cover unknown injuries is a question of fact not resolved mechanically by the literal language of the formal release.

The majority declines to look beyond the wording of the release on the basis that Ms. Gecy neither alleged in her com-

plaint nor offered evidence to establish that the release was not intended to cover unknown injuries. Ms. Gecy's complaint alleges that the release should be rescinded because at the time of its execution, both parties were unaware of the severity of her injuries. I would construe that allegation broadly to include a request for the court to look beyond the mere wording of the release to ascertain the parties' intentions at the time of its execution.

I would remand to the trial court for disposition on the merits.