PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CONVEY COMPLIANCE SYSTEMS,
INCORPORATED,

*Plaintiff-Appellee,*

v.

1099 PRO, INCORPORATED,

*Defendant-Appellant.*

No. 04-2335

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-03-525)

Argued: November 30, 2005

Decided: March 30, 2006

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Motz and Judge Traxler joined.

## COUNSEL

**ARGUED:** John Foster Anderson, TROUTMAN SANDERS, L.L.P.,
McLean, Virginia, for Appellant. Donald Wayne Niles, PATTER-
SON, THUENTE, SKAAR & CHRISTENSEN, P.A., Minneapolis,
Minnesota, for Appellee. **ON BRIEF:** Norman M. Abramson, PAT-
TERSON, THUENTE, SKAAR & CHRISTENSEN, P.A., Minneapo-
lis, Minnesota, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

To end previous litigation between them in Minnesota state court, Convey Compliance Systems, Inc., and 1099 Pro, Inc., entered into a settlement agreement that included mutual general releases of all claims between them, "known or unknown, arising out of any actions or events occurring in whole or part prior to or concurrent with the date" of the settlement.

When, after the settlement, 1099 Pro initiated a proceeding against Convey in the World Intellectual Property Organization to compel Convey to give up an Internet domain name that it had acquired before the settlement, Convey commenced this action for breach of the settlement agreement. 1099 Pro asserted that it was not aware of the domain name dispute when entering into the settlement agreement and that therefore its claim against Convey was not within the scope of claims intended to be released in the settlement agreement. The jury rejected 1099 Pro's position and returned a verdict in favor of Convey, declaring that 1099 Pro breached the agreement. The district court, relying on the language of the settlement agreement, awarded Convey its attorneys fees and costs in the amount of $406,750.

On appeal, 1099 Pro challenges (1) the sufficiency of the evidence, (2) an evidentiary ruling made by the district court at trial, and (3) the district court's award of attorneys fees and costs. For the reasons that follow, we affirm.

I

Convey is a Minnesota corporation engaged in the business of developing and selling computer software products used to generate tax forms, particularly those pertaining to compliance with IRS Code § 1099. Its customers typically include tax, accounting, and information technology professionals, including chief financial officers, comptrollers, and other members of accounting and information technology departments. Convey's products range from relatively inexpensive software for desktop computers that typically generate less

than 10,000 tax forms to expensive and complex software for large operations that require the generation of over a million forms.

1099 Pro is a California corporation that competes with Convey in the market for the less expensive software.

In late 2000, 1099 Pro hired Convey's former vice president of sales and marketing, Edward J. McNamara, as a consultant. When Convey learned that McNamara was employed by 1099 Pro, Convey commenced an action against 1099 Pro and McNamara in Minnesota state court, alleging unfair competition, particularly 1099 Pro's conversion of customer and prospect lists; McNamara's breach of contract; 1099 Pro's tortious interference with a nondisclosure and noncompete contract; McNamara's breach of fiduciary and loyalty duties; 1099 Pro's vicarious liability for McNamara's improper disclosures; and violations of the Minnesota Trade Secrets Act.

To end the Minnesota litigation, Convey and 1099 Pro entered into a settlement agreement on May 17, 2001, in which they included mutual releases and covenants not to sue. The mutual releases provided:

> In consideration of all the foregoing, Defendants [1099 Pro and McNamara] on behalf of themselves and any person or entity claiming any rights through them, do hereby absolutely and unconditionally release and forever discharge Plaintiffs [Convey], their employees, agents, attorneys, insurers, successors and assigns from any claims, demands, rights and causes of action and damages, whether liquidated or unliquidated, absolute or contingent, known or unknown, arising out of any actions or events occurring in whole or part prior to or concurrent with the date hereof, including specifically, but without limiting the generality of the foregoing, any and all claims Defendants have asserted or could have asserted in the Litigation against Plaintiffs, of any nature whatsoever.

The mutual covenants not to sue provided:

> The parties hereby acknowledge and agree that they will not initiate any legal action against any other party based on any claim or obligation released pursuant to paragraph 3 or 4 of this Agreement. Any breach of this provision will entitle the non-breaching party to damages, including reasonable attorneys' fees. This provision shall not be construed to limit either parties' [sic] right to initiate legal action to enforce the terms of this Agreement.

Approximately three months before executing the settlement agreement, Convey's Marketing Communications Director, acting in the routine course of her duties for Convey, registered the domain name "www.1099professionals.com" and various cognate designations. Convey's Marketing Communications Director was not involved in the Minnesota state court litigation and its settlement, and she did not inform the Convey executives who were involved in the litigation about the acquisition of the domain names. Accordingly, at trial, Convey's corporate executives who were involved in the settlement negotiations testified that they could not have informed 1099 Pro about the domain name acquisitions during negotiations because they themselves were unaware of the acquisitions.

Convey did not activate or begin using the domain name "1099professionals.com" until July 2001, approximately two months after executing the settlement agreement. When 1099 Pro learned that Convey had registered the "1099professionals.com" domain name and began using the name, it initiated an action in the World Intellectual Property Organization ("WIPO") against Convey under the Uniform Domain Name Dispute Resolution Policy, seeking an order transferring to it the domain name "1099professionals.com." Convey defaulted in the WIPO proceedings, and a WIPO panel ordered the transfer of the "1099professionals.com" domain name to 1099 Pro.

Convey commenced this action in the Eastern District of Virginia, seeking damages for 1099 Pro's alleged breach of its settlement agreement and to reverse the WIPO decision. Convey alleged that in the settlement agreement, 1099 Pro had agreed not to sue Convey for any claim, *known or unknown*, that arose out of any actions or events occurring in whole or in part prior to the settlement release. 1099 Pro filed a counterclaim for federal trademark infringement, unfair com-

petition, and cyberpiracy arising from Convey's acquisition and use of the "1099professionals.com" domain name. Following a four-day trial, the jury returned a verdict declaring that 1099 Pro breached the settlement agreement and ruling against 1099 Pro on its counterclaim. Following the verdict, the district court entered a declaratory judgment and awarded Convey attorneys fees and costs in the amount of $406,749.65.

This appeal followed.

## II

1099 Pro contends that the evidence was insufficient to support the jury's verdict declaring that 1099 Pro breached the settlement agreement in instituting the WIPO proceeding. Its contention is grounded on the principle of Minnesota law that even though a release and covenant not to sue may apply to "unknown" claims, such language is not a bar to claims that were not within the contemplation of the parties. 1099 Pro argues that the testimony was undisputed in this case that "at the time the parties settled the Minnesota trade secret case, neither Convey nor 1099 Pro contemplated any cyberpiracy claims stemming from Convey's registration of the domain name, much less any trademark or unfair competition claims that later might arise based on the future use of the domain name."

Convey contends that the releases expressly apply to "unknown" claims based on actions taken by either party prior to the execution of the settlement agreement and that the parties in fact intended to give such broad releases. Convey asserts that 1099 Pro drafted the settlement agreement and "insisted" upon the breadth of the release provisions. It argues that the jury's verdict was amply supported by this evidence.

Under Minnesota law, which the parties agree applies to the interpretation of the settlement agreement, the binding effect of a general release provision for *unknown* claims depends on the intent of the parties. If it can be shown that the parties intended to release all unknown claims, it will be considered binding. As the Minnesota Supreme Court summarized:

> [E]ven though a release expressly covers unknown injuries, it is not a bar to an action for such unknown injuries if it can be shown that such unknown injuries were not within the contemplation of the parties when the settlement was agreed upon, but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding.

*Aronovitch v. Levy*, 56 N.W.2d 570, 576 (Minn. 1953); *see also Jeffries v. Gillitzer*, 225 N.W.2d 17, 19 (Minn. 1975) ("If the parties are found to have intended the release to be final as to unknown as well as known injuries, then the release will be held binding"); *Schmidt v. Smith*, 216 N.W.2d 669, 672 (Minn. 1974) (same); *Doud v. Minneapolis Street Ry. Co.*, 107 N.W.2d 521, 524 (Minn. 1961) (same).

To determine the intent of the parties, Minnesota law directs that the courts consider parol evidence "beyond the language of the release itself." *Jeffries*, 225 N.W.2d at 19; *Couillard v. Charles T. Miller Hosp. Inc.*, 92 N.W.2d 96, 102 (Minn. 1958) (allowing the use of parol evidence to determine the nature and extent of release); *Larson v. Sventek*, 1 N.W.2d 608, 610 (Minn. 1942) (same). Thus, the issue of a party's intent is generally a matter of fact for the jury. *Schmidt*, 216 N.W.2d at 672; *Couillard*, 92 N.W.2d at 103; *Aronovitch*, 56 N.W.2d at 575.

In evaluating evidence of intent, the Minnesota courts have focused on five factors: (1) the language of the release; (2) the presence of legal counsel during execution of the release; (3) the existence of fraud or misrepresentation; (4) wrongful concealment of facts or other inequitable conduct; and (5) duress. *Sorensen v. Coast-to-Coast Stores, Inc.*, 353 N.W.2d 666, 669-70 (Minn. 1984).

Considering these factors in this case, we conclude that sufficient evidence existed to support the jury's verdict that 1099 Pro breached its covenant not to sue by initiating a WIPO action, even though the WIPO claims were not known to 1099 Pro at the time of the settlement agreement. *First*, the language of the release itself is expansive and covers the WIPO claims. The release language not only covers all unknown claims, but all unknown claims accruing after the settlement date so long as they arose out of "any actions or events occur-

ring in whole or part prior to" the settlement agreement. 1099 Pro's WIPO claims concededly arose in part out of Convey's registration of the domain name "1099professionals.com," even though certain claims did not become actionable until Convey began using the domain name after the settlement agreement. But since the adoption and registration of the domain name were actions or events giving rise to 1099 Pro's claims and since those actions occurred prior to the settlement agreement, the fully accrued claims were presumptively covered by the language of the release and covenant not to sue. *See Sorensen*, 353 N.W.2d at 670 ("[T]he law presumes that parties to a release agreement intend what is expressed in a signed writing").

*Second*, there was independent evidence that the parties intended to release unknown claims. The jury heard evidence that the release language in question was the subject of negotiation. When Convey proposed during negotiations to narrow the release language so as to commit resolution of any "unknown" claims to arbitration, 1099 Pro expressly rejected the proposal, insisting on the broad language of the release as drafted. Indeed, in a letter dated April 24, 2001, 1099 Pro explained its position by expressing a "very strong desire *not to have* future disputes."

*Third*, throughout the settlement negotiations, both 1099 Pro and Convey were represented by counsel. There was no evidence of fraud or misrepresentation, inequitable conduct, or duress during these negotiations, as the district court explicitly observed. While 1099 Pro argued that Convey purposefully withheld the information that it had acquired the "1099professionals.com" domain name, there was no evidence to support that contention. Indeed, the evidence showed the contrary — that Convey's Marketing Communications Director acquired the domain name in the ordinary course of business and never advised the top executives, who were involved in the settlement negotiations with 1099 Pro, of that fact.

*Fourth*, there was express evidence of the parties' intent to resolve *all* disputes between them, whether known or unknown. Convey's president testified that "[i]n the settlement, we released any and all claims, known or unknown; to me that pretty much encompasses everything, known and unknown." Similarly, Convey's chief financial officer testified that Convey had offered to submit any unknown

claims to alternative dispute resolution but that 1099 Pro insisted on a comprehensive release provision.

Thus, although 1099 Pro was able to show that it was not aware of any disputes relating to the domain name at the time of the settlement agreement, there was sufficient evidence from which the jury could have concluded that the parties nonetheless intended to foreclose future litigation arising from any action that occurred prior to their settlements, *whether known or unknown*.

### III

1099 Pro also contends that the district court abused its discretion during trial in excluding evidence relating to the decisions made by the WIPO panel ordering Convey to transfer the "1099professionals.com" domain name to 1099 Pro. The district court limited the evidence about the WIPO proceeding to the fact that 1099 Pro commenced the WIPO proceedings, instructing the jury that although "the WIPO arbitration proceeding . . . has been mentioned several times in different context during this trial," evidence of that proceeding "is not admissible for purposes of making a judgment in this case. You will have to decide based upon the evidence presented to you, the facts and liability of this case."

Convey responds that the evidence that 1099 Pro sought to admit was irrelevant and would have been prejudicial if admitted.

It is clear that the substantive rulings made in the WIPO proceeding would not be relevant to whether 1099 Pro breached the settlement agreement. Convey's complaint for breach of contract depended simply on 1099 Pro's institution and prosecution of the WIPO proceeding, regardless of its success.

With respect to 1099 Pro's counterclaims, both parties agree that pursuant to the Uniform Domain Name Dispute Resolution Policy, Convey was entitled to *de novo* review of the WIPO decision. *See Eurotech, Inc. v. Cosmos European Travels AG*, 213 F. Supp. 2d 612, 617 n.10 (E.D. Va. 2002); *Int'l Bancorp, L.L.C. v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 192 F. Supp. 2d 467,

475 n.16 (E.D. Va. 2002). 1099 Pro argues, however, that the exclusion of the evidence about the results of the WIPO proceeding permitted the jury to infer improperly that Convey had prevailed in the proceeding and was therefore the rightful owner of the "1099professionals.com" domain name.

We conclude that the district court did not abuse its discretion in limiting evidence about the WIPO proceeding. First, since the district court was conducting a *de novo* review of the issues relating to registration and use of the domain name, the results of the earlier proceeding were at best irrelevant and at worst prejudicial to the jury's factual determinations. Second, 1099 Pro cites no authority concluding that the refusal to allow the introduction of such evidence was an abuse of discretion. To the contrary, there is at least some authority pointing in the opposite direction. *See Eurotech*, 213 F. Supp. 2d at 617 n.10 ("Worth noting here is that the result reached in the WIPO proceeding is neither admissible, nor entitled to any deference, with respect to the merits issues presented in this suit"). Third, 1099 Pro's concern about a prejudicial adverse inference is belied by the jury's having heard evidence that Convey appealed the WIPO decision and was required to transfer the domain name "1099professionals.com" to 1099 Pro. What 1099 Pro was *not* allowed to introduce was evidence from the WIPO proceeding concerning the qualifications of the WIPO panel or their legal determinations. The district court was justifiably concerned about preserving the integrity of the *de novo* review.

We find no abuse of discretion.

IV

Finally, 1099 Pro challenges the district court's award of attorneys fees and costs.

As a general matter, Minnesota law follows the American rule that "each party bears its own attorneys fee in the absence of a statutory or contractual exception." *Hoang Minh Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). In this case there was a contractual exception. The settlement agreement provided that "[a]ny breach of this [covenant not to sue] will entitle the non-breaching party to damages, including reasonable attorneys' fees." Because 1099 Pro was found

liable by the jury for a breach of contract, the award of attorneys fees became a matter of applying the terms of the settlement agreement.

1099 Pro contends that the terms of the settlement do not cover fees incurred in defending its counterclaims because those claims accrued only *after* the settlement agreement when Convey began using the "1099professionals.com" domain name. This argument fails, however, because the settlement agreement covers claims accruing both before and after the settlement so long as they arise out of any "actions or events occurring in whole or part prior" to the execution of the settlement agreement. Because Convey acquired the "1099professionals.com" domain name before execution of the settlement agreement and 1099 Pro's counterclaims arose in part out of that acquisition, claims arising from those events, even in part, were barred by the terms of the agreement. Accordingly, the award of reasonable attorneys fees in defending those claims was consistent with the terms of the settlement agreement.

1099 Pro contends also that even though the contractual language might make provision for "attorneys' fees," it makes no provision for an award of costs. But this contention ignores the language of the settlement agreement, which gives the non-breaching party "*damages, including* reasonable attorneys' fees." This contractual language is sufficiently broad to cover as an element of damage the costs of defending litigation initiated by 1099 Pro in breach of its covenant not to sue.

Finally, 1099 Pro contends that the amount of the award, $406,750, was unreasonable. The district court, however, considered Convey's application for fees and costs in some detail, measuring them not only against going rates, but also against the overall costs of similar litigation. The district court observed that the fee application was carefully prepared and supported by detailed billing, affidavits, and exhibits. This was a complex and somewhat protracted case, and in the overall circumstances, we cannot conclude that the district court abused its discretion in determining the amount of its award. *See Bass v. E.I DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003).

*AFFIRMED*